**STEWART–WARNER CORPORATION, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**No. 81–12–01740.**

United States Court of International Trade.

Dec. 16, 1983.

Eugene L. Stewart, Washington, D.C. (Eugene L. Stewart, Terence P. Stewart and Mark A. Casso, Washington, D.C., on the briefs), for plaintiff.

J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Washington, D.C. Joseph I. Liebman, Atty. in Charge, Commercial Litigation Branch, New York City (Deborah E. Rand, Washington, D.C., on the brief), for defendant.

Lamb & Lerch, New York City, Richard J. Kaplan, New York City, of counsel (Sidney H. Kuflik, New York City, on the brief), for amicus curiae Diversified Products, Inc.

*Opinion and Order*

MALETZ, Senior Judge.

This action involves a rare event in this court—a challenge by an American manufacturer of a Customs Service classification of competing imported merchandise. The American manufacturer, Stewart-Warner Corp. (Stewart-Warner), brought this action pursuant to section 516 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516 (Supp. IV 1980), and 28 U.S.C. § 1581(b), seeking reclassification of certain speedometers used primarily on cycle exercisers.[1] Upon entry the merchandise was classified as "other" speedometers under item 711.98 of the Tariff Schedules of the United States (TSUS). Plaintiff claims that these speedometers should be classified as bicycle speedometers under item 711.93, which would result in an increase in the rate of duty by 21.1% ad valorem.[2]

---

**1.** Although Stewart-Warner made no preliminary request for information as to classification or rate of duty as required by 19 U.S.C. § 1516(a) (Supp. IV 1980), this is not a jurisdictional defect. "Complaints under 516(b) [the predecessor to 19 U.S.C. § 1516(a) ] may be filed without a preliminary request for information as to the classification and rate of duty if the complainant knows the same." T.D. 44,466, 58 Treas.Dec. 863, 865. There is no dispute here that Stewart-Warner did know that information.

**2.** The relevant provisions provide:

Schedule 7, Part 2, Subpart D:

\* \* \* \* \* \* \* \*

Revolution counters, production counters, taximeters, odometers, pedometers, counters similar to the foregoing

*See generally Zenith Radio Corp. v. United States,* 437 U.S. 443, 450, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1978). To require more of plaintiff would be a mindless formalism.

The government has classified the merchandise as other than bicycle speedometers on the premise that the merchandise is chiefly used on stationary exercise cycles, not on mobile bicycles. Therefore, the government concludes, the imported speedometers cannot be a bicycle speedometer for tariff purposes. Stewart-Warner, on the other hand, contends that the legislative history of the TSUS provision for bicycle speedometers strongly indicates that "bicycle-type" speedometers, including the imported merchandise, should be classified under item 711.93.

The court's own examination of the legislative history of the bicycle speedometer tariff provision impels it to conclude that Stewart-Warner is correct. Accordingly, for the reasons that follow, judgment shall enter for plaintiff.

But for the inexorable march of progress, it is safe to conclude that this action would never have arisen. For the speedometers which are the subject of this action had not been invented at the time the new TSUS provision for bicycle speedometers was enacted in 1965. In the early 1970's, however, in response to a growing demand for a speedometer which could be mounted on the left side of either a bicycle or an exerciser, the Japanese developed the double-gear hub drive speedometer—the subject of the present action.

The advantage of the double-gear hub drive speedometer vis-a-vis its single-gear counterpart is its capacity to give a clockwise speed indicator readout when mounted on the left side of a wheel. The single-gear speedometer can only give a clockwise readout when mounted on the right side of a wheel. Since, as a practical matter, the design of exercise cycles precludes mounting a speedometer on the right side of the wheel, the double-gear hub drive speedometer has been used primarily in conjunction with exercisers, though it is perfectly suited for use on bicycles. Indeed, in all respects save one, this speedometer is physically identical with a single-gear bicycle speedometer, the one difference being that the former has the additional gear which permits it to function in a clockwise manner when mounted on the left side of a wheel.

At the outset it should be noted that the government does not dispute that the merchandise is a bicycle-type speedometer, nor does the government quarrel with the fact that a double-gear hub drive speedometer is suitable for use on a bicycle. The crux of the government's argument rather is twofold. First, plaintiff cannot prevail, the government maintains, since double-gear hub drive speedometers are not chiefly used as bicycle speedometers. Alternatively, the government submits that item 711.-93 is an *eo nomine* tariff provision, that the merchandise does not possess an essential resemblance to a bicycle speedometer and that, for that reason, Stewart-Warner's action must likewise fail. While a reading of item 711.93 *in vacuo* might arguably provide some succor to the government, when that provision is exposed to the light of its legislative history it becomes unquestionable that the imported merchandise is properly classified as a bicycle speedometer under item 711.93.

The Tariff Act of 1930 as originally enacted made no specific provision for bicycle speedometers. This situation continued even after the TSUS became law in 1963. Within weeks after enactment of the TSUS several errors and omissions in the new schedules were pointed out to Congress, including the absence of a provision for bicycle speedometers. In December, 1963 the House Ways and Means Committee invited interested parties to submit proposed changes in order to eliminate anomalies in the TSUS. The upshot was the Tariff Schedules Technical Amendments Act of 1965, Pub.L. No. 89–241, 79 Stat. 933. *See* H.R.Rep. No. 342, 89th Cong., 1st Sess. (1965); S.Rep. No. 530, 89th Cong., 1st

---

articles, speedometers and tachometers, all the foregoing not provided for in subpart C of this part; parts of the foregoing:

\* \* \* \* \* \* \* \*

711.93 Bicycle speedometers and parts thereof ...............................24.9% ad val.
711.98 Other ......................... ..... 3.8% ad val.

Sess. (1965), *reprinted in* 1965 U.S.Code Cong. & Ad.News 3416.

In response to the December, 1963 congressional invitation, W.E. Faithorn, Jr., assistant secretary for Stewart-Warner, submitted a letter to the House Ways and Means Committee. The Faithorn letter pointed out the overwhelming need for a specific bicycle-type speedometer tariff provision in order to plug a purported loophole in the TSUS that allowed importers to bring in bicycle-type speedometers, putatively for use on motor scooters and motor bikes, at a substantially lower rate of duty.[3]

Prompted by this letter, Congress enacted section 36(k) of the Tariff Schedules Technical Amendments Act, 79 Stat. 941, which amended the provisions pertaining to speedometers. That amendment included a specific breakout provision for bicycle speedometers providing:

| | | |
|---|---|---|
| 711.91[4] | Bicycle speedometers and parts thereof | 55% ad val. |
| 711.98 | Other | 10% ad val. |

The House Report accompanying this amendment added the following telling note:

> This new provision for bicycle speedometers would include *certain bicycle-type speedometers* which are used to a limited extent on motor scooters and motor bikes and which are currently classified under item 711.92 as being "suitable for use in highway-type motor vehicles."

H.R.Rep. No. 342, 89th Cong., 1st Sess. 26 (emphasis added). In the court's view, Congress has clearly spoken. *Cf. Asahi Chemical Industry Co. v. United States,* 4 CIT ——, 548 F.Supp. 1261 (1982). Indeed, the House Report, when read in the context of the Faithorn letter, makes it plain that it was the intent of Congress to prevent bicy-

cle-*type* speedometers, which could readily be used on bicycles, from being imported at tariff rates lower than the rates which applied to bicycle speedometers.

To the government's and amicus' argument that the phrase "certain bicycle-type speedometers" in the House Report refers only to motor scooters and motor bike speedometers, a ready reply is provided by the Faithorn letter, a document which furnished the sole impetus for enactment of item 711.93 and, as such, is a further strong indicia of Congress' intent on this subject. *See Chicago & N.W. Ry. Co. v. United Transportation Union,* 402 U.S. 570, 576, 91 S.Ct. 1731, 1735, 29 L.Ed.2d 187 (1971); *Ameliotex, Inc. v. United States,* 65 CCPA 22, C.A.D. 1200, 565 F.2d 674 (1977); *Best Moulding Corp. v. United States,* 51 CCPA 7, C.A.D. 829 (1963). From that letter it is obvious that the word "certain" refers not only to motor scooter and motor bike speedometers, but, in the words of the Faithorn letter, also to speedometers which "from the point of view of design, material, construction and overall quality, are built to the less expensive standards for a bicycle speedometer as compared to a regular motorcycle or automobile instrument." This definitively describes the subject merchandise.

Although Congress did not use the term "bicycle-type speedometers" in drafting item 711.93, a reading of the entire legislative history makes it unmistakable that this is what Congress intended to include in that item number. *See Philbrook v. Glodgett,* 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975); *United States v. Bacto-Unidisk,* 394 U.S. 784, 799–801, 89 S.Ct. 1410, 1418–1419, 22 L.Ed.2d 726 (1969) (A court "must take care not to narrow the coverage of a statute short of the point where Congress indicated it

---

**3.** The 1963 TSUS provision for speedometers read in part:

  Speedometers and tachometers, and parts thereof:

| | | |
|---|---|---|
| 711.92 | Speedometers suitable for use in highway type motor vehicles | 9% ad val. |
| 711.94 | Other speedometers and tachometers | $2.25 each + 35% ad val. |
| 711.96 | Parts | 45% ad val. |

Importers of bicycle speedometers, by taking advantage of this so-called loophole, realized a savings in duty equal to the difference between the item 711.92 rate and that for item 711.94.

**4.** Item 711.91 was redesignated as item 711.93 by section 405(d), Title IV of the Automotive Products Trade Act of 1965, Pub.L. No. 89–283, 79 Stat. 1016, 1025.

should extend."). And it is clear from all the evidence that the imported merchandise are bicycle-type speedometers.

Finally, as for the contentions that item 711.93 is either an *eo nomine* or use provision, while rules of construction may be employed to determine the meaning of a tariff provision, those rules are inapplicable where it is shown that the legislature intended a different result. *Esco Manufacturing Co. v. United States*, 63 CCPA 71, 75, C.A.D. 1167, 530 F.2d 949, 952 (1976) ("Where the intent of Congress is apparent, rules of construction [such as whether a tariff item number is a classification by use or *eo nomine* provision] may not be employed to narrow, limit, or circumscribe the statute."); *Sandoz Chemical Works, Inc. v. United States*, 50 CCPA 31, 35, C.A.D. 815 (1963); *S & T Imports, Inc. v. United States*, 78 Cust.Ct. 45, 59, C.D. 4690 (1977). It is thus unnecessary to determine whether item 711.93 is a tariff classification by use or an *eo nomine* provision, given that the classification of the imported merchandise was manifestly intended to be under item 711.93. *See also United States v. Durst Mfg. Co.*, 46 CCPA 74, 76, C.A.D. 700 (1959). In short, labelling item 711.93 as either a use or *eo nomine* provision would generate, not eliminate, ambiguity contrary to congressional intent.

Based on all the foregoing, the court finds that the imported merchandise are bicycle speedometers within the meaning of item 711.93 and should be so classified. Judgment for plaintiff shall enter accordingly.