**STEWART–WARNER CORPORATION, Appellee,**

v.

**The UNITED STATES, Appellant.**

**Appeal No. 84–1041.**

United States Court of Appeals, Federal Circuit.

Nov. 19, 1984.

Davis, Circuit Judge, filed dissenting opinion.

Joseph I. Liebman, New York City, argued for appellant. With him on the brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, and Deborah E. Rand, Washington, D.C.

Terence P. Stewart, Stewart & Stewart, Washington, D.C., argued for appellee. With him on the brief was Eugene L. Stewart, David A. Hirsh and D. Scott Nance, Washington, D.C.

Sidney H. Kuflik, Lamb & Lerch, New York City, was on the brief for amicus curiae.

Before DAVIS, SMITH and NIES, Circuit Judges.

EDWARD S. SMITH, Circuit Judge.

In this customs case, the initial classification by the United States Customs Service of certain speedometers as "other" speedometers was rejected by the United States Court of International Trade, which held instead that they should be classified as "bicycle" speedometers. Appellant, the United States (Government), appeals the judgment of the Court of International Trade. We reverse.

*Issues*

The principal issue before this court is whether the trial court erred, as a matter of law, in holding that certain imported speedometers of a "bicycle-type," used primarily on exercisers, are "bicycle speedometers" within the meaning of item 711.93, Tariff Schedules of the United States (TSUS),[1] rather than "other" speedometers under TSUS 711.98. A secondary issue is whether the trial court clearly erred regarding certain factual findings concerning the description and use of the subject speedometers.

1. *See* 19 U.S.C. § 1202 (1982).

**664**

*Background*

Appellee Stewart-Warner Corporation (Stewart-Warner) is an American manufacturer of the subject speedometers and is seeking reclassification, on a prospective basis, of competing imported merchandise.[2] The judge below referred to this as a "rare event" in his court. We observe that the Government's prosecuting an appeal in this court that will reduce the rate of duty must be equally as rare.

The importer of the challenged entry is not a party to this action, but another importer, Diversified Products Corporation, has participated as *amicus curiae*. When the product entered this country the Customs Service classified it under TSUS 711.98, "other," a basket category covering certain "revolution counters" and similar items with a 1984 duty of 1.9 percent ad valorem for such products from most countries, as opposed to classifying it under TSUS 711.93, "bicycle speedometers and parts thereof," which carries a 1984 duty of 20.9 percent ad valorem for such items from most countries.[3] The lower court, after a 3-day trial on the issue, held against the Customs Service's classification and in favor of Stewart-Warner's position that the product should be classified under the higher-duty "bicycle speedometer" provision, because that provision encompasses "bicycle-type" speedometers, including those primarily used on exercisers. The Government has appealed here.

Regarding the product itself, we refer to it hereafter as the double-gear hub drive speedometer (double-gear speedometer), as have all the parties and the lower court. We set forth below precisely the factual description of the product as found by the trial court:[4]

[T]he speedometers which are the subject of this action had not been invented at the time the new TSUS provision for bicycle speedometers was enacted in 1965. In the early 1970's, however, in response to a growing demand for a speedometer which could be mounted on the left side of either a bicycle or an exerciser, the Japanese developed the double-gear hub drive speedometer—the subject of the present action.

The advantage of the double-gear hub drive speedometer vis-a-vis its single-gear counterpart is its capacity to give a clockwise speed indicator readout when mounted on the left side of a wheel. The single-gear speedometer can only give a clockwise readout when mounted on the right side of a wheel. Since, as a practical matter, the design of exercise cycles precludes mounting a speedometer on the right side of the wheel, *the double-gear hub drive speedometer has been used primarily in conjunction with exercisers, though it is perfectly suited for use on bicycles.* Indeed, in all respects save one, this speedometer is physically identical with a single-gear bicycle speedometer, the one difference being that the former has the additional gear which permits it to function in a clockwise manner when mounted on the left side of a wheel. [Emphasis supplied.]

Stewart-Warner, which urges that this court affirm the lower court's holding that the double-gear speedometers are properly classified as "bicycle speedometers," nevertheless alleges error in a number of that court's factual findings. Hence we discuss further the facts involving the product's description and use as found by the trial court.

*Opinion*

■ The meaning of customs classification terms, such as "bicycle speedometers,"

---

**2.** *See* 19 U.S.C. § 1516 and 28 U.S.C. § 1581(b). Stewart-Warner states that it is not seeking "reclassification" but "correction of the misclassification" by Customs, since prior to the 1980 Customs ruling resulting in the issue before us, speedometers capable of use on both exercisers and bicycles were apparently classified as bicycle speedometers under TSUS 711.93.

**3.** *See Stewart-Warner Corp. v. United States,* 577 F.Supp. 25, 25–26 n. 2 (Ct. Int'l Trade 1983), setting forth in greater detail the TSUS provisions.

**4.** *Id.* at 26.

is an issue of law which we review independently, while the question whether a particular item fits that meaning is a question of fact which we review under the clearly erroneous standard.[5] In a classification challenge such as this commenced in the Court of International Trade, the Customs Service's decision is presumed correct, and the burden of proving otherwise rests upon the challenger.[6]

### 1. The Meaning of "Bicycle Speedometers"

■ Stewart-Warner urges that we affirm the lower court's holding that the legislative history of TSUS 711.93 indicates that Congress meant for "bicycle-type" speedometers, including those here at issue, to be classified under that provision. The Government and *amicus* counter that the lower court erred as a matter of law in not recognizing that the term "bicycle speedometers," by its clear wording, provides only for speedometers chiefly used on bicycles, not on exercisers. Alternatively, the Government and *amicus* contend that the lower court misinterpreted the legislative history of TSUS 711.93 and that Congress did not intend to include all "bicycle-type" speedometers in that provision. We examine both theories.

### a. The Legislative History of TSUS 711.-93

Assuming for the purpose of thorough analysis that the plain meaning of the statutory term, "bicycle speedometers," is not clear to us, we examine its legislative history, as did the lower court. The most important piece in that immediate history is the statement in the 1965 House Ways and Means Committee Report regarding the new provision:[7]

This new provision for bicycle speedometers would include *certain* bicycle-type speedometers *which are used to a limited extent on motor scooters and motor bikes* and which are currently classified under item 711.92 as being "suitable for use in highway-type motor vehicles." [Emphasis supplied.]

This statement clearly states Congress' intent that "certain bicycle-type speedometers which are used to a limited extent on motor scooters and motor bikes" are included in the new provision. It states no more and no less. It does not, for example, distinguish between light-and heavy-weight speedometers, as Stewart-Warner has stressed, nor does it differentiate among speedometers by value, as Congress earlier had done. It does distinguish a *certain* type of speedometer by the concept of use—*i.e.*, those which are used to a limited extent on motor scooters and motor bikes, and which, by implication, are therefore chiefly or mostly used on bicycles. Other than these two ideas—that certain speedometers used to a limited extent on motor scooters and motor bikes should be classified under the new bicycle speedometer provision because, by implication, they are mostly used on bicycles, and that the concept of use is somehow involved in this provision—Congress has not told us more.

This reading is consistent, in our view, with the 1964 "Faithorn letter" from a Stewart-Warner executive to the House Ways and Means Committee.[8] In that letter Stewart-Warner complained about the loophole arising from the then-existing low-duty TSUS provision for "speedometers suitable for use in highway type motor vehicles," under which provision speedometers suitable for use on motor bikes or mopeds were being imported and then sold

**5.** *Childcraft Educ. Corp. v. United States*, 742 F.2d 1413, 1414 (Fed.Cir.1984); *Daw Indus., Inc. v. United States*, 714 F.2d 1140, 1141–42 (Fed. Cir.1983).

**6.** 28 U.S.C. § 2639(a)(1); *Jarvis Clark Co. v. United States*, 733 F.2d 873 (Fed.Cir.1984).

**7.** H.R. REP. NO. 342, 89th Cong., 1st Sess. 26, as set forth in *Stewart-Warner Corp.*, 577 F.Supp.

at 27. We recognize and have reviewed the full legislative history of this item, dating from 1930 when these and similar items were originally dutiable according to defined value brackets. Tariff Act of 1930, ¶ 368(a), 19 U.S.C. § 1001 (repealed 1962).

**8.** *See Stewart-Warner Corp.*, 577 F.Supp. at 27.

for use on bicycles, thereby avoiding a much higher duty provision. Stewart-Warner believed that this problem would put it out of the bicycle-speedometer-manufacturing business entirely. Naturally, Congress responded, but not by using the tariff language Stewart-Warner suggested in that letter. That language would have created a new item: "Other speedometers * * * including speedometers suitable for use on bicycles whether or not also suitable for installation on motor bicycles or motorcycles." Instead, Congress created an entirely new provision specifically and simply for "bicycle speedometers." It abolished the old item covering speedometers suitable for use on highway-type vehicles, and created instead an "other" basket category.[9]

In short, from the Faithorn letter we draw the same two conclusions as from the House report. Congress was concerned that speedometers mostly or actually used on bicycles were being imported under a lower duty provision covering speedometers suitable for use on mopeds and the like, and the concept of the speedometers' use—rather than their size or value or other criteria—was important in distinguishing among the speedometers. Neither Mr. Faithorn, nor the Congress, had in mind in 1964 a problem with speedometers mostly used on exercisers but suitable for use on bicycles, any more than we today or anyone else (other than inventors with great engineering and commercial foresight) have in mind a customs classification problem with, one may imagine, speedometers mostly used on treadmill equipment in a 1990's space station but suitable for use on bicycles as well.

The lower court, whose long experience in customs classification matters we appreciate, concluded exactly the opposite from the legislative history and letter discussed above:[10]

Indeed, the House report, when read in the context of the Faithorn letter, makes it plain that it was the intent of Congress to prevent bicycle-*type* speedometers, which could readily be used on bicycles, from being imported at tariff rates lower than the rates which applied to bicycle speedometers. [Emphasis in original.]

The lower court's emphasis on the term "bicycle-*type*" speedometers is overdone. The Faithorn letter does not once use the term "bicycle-type" speedometers. Nor, of course, does the statutory provision itself. Only the House report has employed this phrase, and then in a context immediately linked to use—i.e., those speedometers used on motor scooters and motor bikes. The lower court rejected such a linkage to use because of a reference in the Faithorn letter to speedometers constructed and designed "to the less expensive standards for a bicycle speedometer." This is carrying reliance on the Faithorn letter too far. While we agree with the lower court that the Faithorn letter, as the sole impetus for enactment of TSUS 711.93, is "further strong indicia of Congress' intent on this subject,"[11] the letter is not by any means Congress' last word. True, Congress, prompted by that letter, did perceive the loophole problem, but Congress then acted in its own way, as discussed above, by creating the separate "bicycle speedometer" provision.

In sum, we reject the lower court's holding that, based upon an analysis of the legislative history, the meaning of "bicycle speedometers" is really "bicycle-type speedometers." Our analysis of the 1965 and earlier legislative history indicates congressional concern with a specific loophole not here at issue and congressional facility with the use concept in the speedometer context. This analysis does not definitively clarify for us the meaning of TSUS 711.93. Accordingly, we turn to well-established rules of customs construction as an aid in determining the meaning of this provision.[12]

---

**9.** *See id.* note 3 for text of previous TSUS provisions.

**10.** *Id.* at 27.

**11.** *Id.*

**12.** *Id.* at 28.

### b. The Chief Use Concept

The Government and *amicus* contend that the lower court erred in not holding that TSUS 711.93 is a provision controlled by use, such that it encompasses only those speedometers chiefly used on bicycles. The Government's and *amicus'* position finds support in the law, logic, and judicial precedent.

In the law Congress provided in the introductory "General Headnotes and Rules of Interpretation" for the TSUS that:

> 10. *General Interpretative Rules.* For the purposes of these schedules—
>
> \*   \*   \*   \*   \*   \*
>
> (e) in the absence of special language or context which otherwise requires—
>
> (i) a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of articles of that class or kind to which the imported articles belong, and the controlling use is the chief use, i.e., the use which exceeds all other uses (if any) combined[.]

Logic indicates that "bicycle speedometers" is a term "controlled by use," as General Interpretative Rule 10(e)–(i) provides, because the noun "bicycle" acts as an adjective modifying "speedometer" in a way that implies use of the speedometer on a bicycle. If the modifying word or words were purely descriptive—*i.e.*, a "green" speedometer or a "three-inch-in-diameter" speedometer—then the question of use would not arise. However, by employing the term "bicycle" to modify "speedome-

ter," logic compels one to consider some aspect of use.

Judicial precedent applying the chief use rule of construction confirms the logic of employing it here, where our previous analysis of the statutory term and its legislative history could not clarify the meaning of the term. The word "use" or the words "chiefly used" need not themselves appear in the tariff item.[13] For example, the lower court's predecessor has held that canned cat food labeled "for Your Cat" is not classifiable as dog food, even though the product may be identical to that sold as dog food and dogs may eat and relish it. That court stated:[14]

> Dog food is a tariff item which, like smokers' articles, household utensils, tableware, and other classifications too numerous to detail, is a use classification. It means food that is used to feed dogs. It is not necessary that the word "use" or "used" appear in the statute classifying an article. [Citation omitted.]

Similarly, it makes equal sense that "bicycle speedometers" is a use provision which means speedometers used on bicycles. This conclusion is bolstered by the concept of use which pervades the immediate legislative history of the item, as discussed above.

Stewart-Warner urges that, even though the double-gear speedometer may not have been developed until after the creation of TSUS 711.93, tariff classifications are prospective in nature and intended to encompass after-developed articles.[15] While this is a valid and important principle of customs law, it is not applicable here, where the TSUS provision is one based on use

**13.** General Interpretative Rule 10(e)(i); *United States v. C.S. Emery & Co.,* 53 CCPA 1, 4 (CCPA 1966); *Lineiro v. United States,* 37 CCPA 10, 11, 14 (CCPA 1949); *A.N. Deringer, Inc. v. United States,* 54 Cust.Ct. 205, 208 (Cust.Ct.1965).

**14.** *A.N. Deringer, Inc.,* 54 Cust.Ct. at 208. *See also* the following cases holding that the following terms are use provisions: *Lineiro,* 37 CCPA 11 ("byproduct feeds"); *United States v. Hillier's Son Co.,* 14 Ct.Cust.App. 216 (Ct.Cust.App.1926) ("medicinal preparations"); *Western Importing Co. v. United States,* 62 Cust.Ct. 231, 234 (Cust. Ct.1969) ("game machines"); *American Import*

*Co. v. United States,* 44 Cust.Ct. 379 (Cust.Ct. 1960) ("pruning shears").

**15.** Stewart-Warner cites *Davies, Turner & Co. v. United States,* 45 CCPA 39, 43 (CCPA 1957) and *Nootka Packing Co. v. United States,* 22 CCPA 464, 470 (CCPA 1935) for this principle. Both of these cases concerned *eo nomine* provisions, "bent-wood furniture" and "clams, packed in airtight containers," respectively. *Eo nomine* means "[u]nder that name; by that appellation." BLACK'S LAW DICTIONARY (rev. 5th ed.1979).

and, as discussed in part 2 below, the after-created article is no longer used as the TSUS item provides. The lower court specifically held that it was not necessary to decide whether "bicycle speedometers" was an *eo nomine* or a use provision, because the intent of Congress that TSUS 711.93 included "bicycle-type" speedometers was clear.[16] We have held otherwise above—*i.e.*, that the intent of Congress was not clear and the chief use rule of construction applies.

### 2. Double-Gear Hub Drive Speedometers and Their Chief Use

■ Having held that the meaning of the tariff term "bicycle speedometers" covers those speedometers chiefly used on bicycles, rather than "bicycle-type speedometers" as the court below held, we turn now to the factual question whether the double-gear hub drive speedometers here at issue fit that meaning. Primarily this involves the factual question whether or not the speedometers are chiefly used on bicycles. However, Stewart-Warner has raised a number of other factual issues which we first address.

Stewart-Warner apparently contests several aspects of the lower court's findings describing the product, which findings we quoted above. First, Stewart-Warner contends that no fewer than 29 models of stationary exercise bicycles use a speedometer whose drive gear is mounted on the right side of the wheel. This contrasts with the lower court's finding set forth above, that "as a practical matter, the design of exercise cycles precludes mounting a speedometer on the right side of the wheel." We have reviewed the record on this point and do not find the trial court's finding, qualified by the phrase, "as a practical matter," to be clearly erroneous. Substantial testimony exists on the record for that finding, while the exhibits upon which Stewart-Warner relies are clouded by the likelihood that many of the cited 29 exerciser models may have used speedometers

other than the open hub drive type here at issue.

More importantly, Stewart-Warner contests the trial court's findings: (1) that the single-gear hub drive speedometer when mounted on the left side can*not* give a clockwise readout and, consequently; (2) that demand grew for such a speedometer that *could* give a clockwise readout. Stewart-Warner points to information in the record that the company received a patent in 1935 for a single-gear hub drive speedometer which was mounted on the left side and generated a clockwise reading. However, the Government counters that this mechanism involved an enclosed-gear drive, not like the types here at issue, and that Stewart-Warner discontinued manufacture of this item. Consequently, the Government states that when the Japanese came on the market in the 1970's with the double-gear mechanism here at issue, Stewart-Warner needed to "tool-up" to produce that particular item, or lose that market. Our review of the record indicates no clear error in the trial court's findings, set forth above, on the single-gear mechanism and the market demand. We affirm in this regard.

In indirectly alleging these factual errors, and others too insignificant here to mention, appellee appears intent on distracting us from the real factual issue we now face: whether this particular type of double-gear hub drive speedometer is chiefly used on bicycles. The lower court found that this speedometer is "used primarily in conjunction with exercisers, though it is perfectly suited for use on bicycles." The presumptively correct Customs Service classification found that the speedometers in question are chiefly used on exercisers, not bicycles, with only a fugitive use on bicycles. The Government and *amicus* urge that the trial court in effect held that the speedometers are chiefly used on exercisers, and that we should therefore affirm the Customs Service classification. Stewart-Warner provided no evidence at the tri-

---

**16.** *Stewart-Warner Corp.,* 577 F.Supp. at 28.

al below to establish chief use and failed directly to address the question here.

We agree with the Government and *amicus* that the trial court's finding of "primary" use, coupled with the statutory presumption of correctness attaching to the Customs Service's "chief use" decision which Stewart-Warner made no attempt to rebut, should result in affirmance of the finding that the speedometers in question are chiefly used on exercisers, not bicycles. It would be pointless to remand to reestablish this. Similarly, it would be pointless to remand for a factual determination that an "exerciser" is not a "bicycle," as the court below and the parties have assumed. We take judicial notice of the common dictionary definition of "bicycle," [17] which includes the attributes of two wheels, propulsion by the rider, and steering capacity not applicable to the exercisers or stationary bicycles here in the record.

The judgment of the trial court that the subject speedometers should be classified under TSUS 711.93, bicycle speedometers, is reversed, and the initial Customs Service classification of these items under TSUS 711.98, other speedometers, is allowed to stand.

REVERSED.

DAVIS, Circuit Judge, dissenting:

This is a close case but I am not persuaded that Judge Maletz was wrong in his reading of item 711.93 of TSUS. The combination of (a) the "Faithorn letter" (which the majority agrees was the sole impetus for the enactment of TSUS 711.93), (b) the specific use in H.R. No. 342 of "bicycle-*type* speedometers" (emphasis added), and (c) the considerably higher tariff imposed by item 711.93 over item 711.98 ("other" speedometers) suggests to me that Congress intended by the shorthand phrase "bicycle speedometers" in 711.93 to protect all speedometers readily suitable for use on bicycles. Otherwise, domestic manufacturers would not be protected—as I think Faithorn sought and Congress desired—from

the importation of foreign models easily capable (as here) of use with bicycles. I would affirm for the reasons given by the Court of International Trade.

17. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (ed.1967).