**E.M. CHEMICALS, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Slip Op. 96–57.**
**Court No. 91–02–00134.**

United States Court of
International Trade.

March 20, 1996.

Sonnenberg & Anderson (Philip Yale Simons, and Jerry P. Wiskin, New York City; Michelle D. Mancias, Chicago, IL, of counsel), for plaintiff.

Frank W. Hunger, Washington, DC, Assistant Attorney General; Joseph I. Liebman, New York City, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Barbara M. Epstein, New York City); United States Customs Service (Chi Choy, New York City), of counsel, for defendant.

*MEMORANDUM AND ORDER*

## I

### INTRODUCTION

WALLACH, Judge:

Plaintiff, E.M. Chemicals, challenges the classification of imported thermochromic liquid crystal mixtures (hereinafter "TLCs"), also known as chiral nematic liquid crystal mixtures, by the United States Customs Service ("Customs"). Customs classified the merchandise as other products of the chemical industry containing five percent or more of aromatic substances under the Harmonized Tariff Schedule of the United States (hereinafter "HTSUS") subheading 3823.90.29, and assessed duty at a rate of 13.6 percent *ad valorem* plus 3.7 cents per kilogram. E.M. Chemicals asserts that the TLCs are properly classified under HTSUS subheading 3204.90.00 as "Synthetic organic coloring matter . . . Other," with duty assessable at 5.9 per cent *ad valorem*. Defendant, the United States, argues, without a counterclaim, that if Heading 3204 is the appropriate heading, then subheading 3204.19.40 is the proper classification (which carries a 15% rate of duty). This Court exercises its jurisdiction pursuant to 28 U.S.C. § 1581(a) (1994).

The parties have submitted motions for summary judgment. They are denied because genuine issues of fact remain with respect to the "principal use" issue, discussed below. The purely legal issue concerning the structure of Heading 3204 and the subheadings thereunder is, however, appropriate for summary adjudication pursuant to USCITR 56(c). Consequently, the Court determines that if Plaintiff establishes at trial that the subject merchandise is "coloring matter" within the meaning of Heading 3204, then subheading 3204.19.40, suggested by Defendant, is the appropriate classification subheading for the merchandise.

1. Chiral nematic liquid crystals are also known as cholesteric liquid crystals. Plaintiff's Motion

## II

### BACKGROUND

#### A

#### Statement Of Material Facts Not In Issue.

The imported merchandise at issue consists of Licritherm standard mixtures, designated by plaintiff as "TM75A", "TM75B", "TM74A" and "TM74B" and other special mixtures, designated by plaintiff as "TM533" and "TM519". These articles are chiral nematic liquid crystal mixtures, commonly known as "thermochromic liquid crystals." Complaint and Answer ¶ 5 (hereinafter "Comp. & Ans."); Plaintiff's Statement of Material Facts Not In Issue (hereinafter "PSMF") and Defendant's Response (hereinafter "DR") ¶ 4; Defendant's Statement of Material Facts Not In Issue (hereinafter "DSMF"), Plaintiff's Response (hereinafter "PR") ¶ 1. The imported articles are mixtures of chiral nematic liquid crystal compounds each of which has a different chemical composition. Comp. & Ans. ¶ 7; PSMF and DR ¶ 6. Merck Ltd. of Poole, England produces the liquid crystals. PSMF and DR ¶ 6. The imported TLCs are mixtures of two or more synthetic organic compounds. DSMF and PR ¶ 2; PSMF and DR ¶ 7. TLCs are used in their condition as imported and they do not undergo chemical processing after importation. PSMF and DR ¶ 27. In addition, they are not further chemically altered after importation. PSMF and DR ¶ 28.

Liquid crystals are classified as: smectic, nematic and chiral nematic.[1] In general, their molecules are rod-shaped. Comp. & Ans. ¶ 9.

Chiral nematic liquid crystals have a natural twisted structure which imparts a three-dimensional order. The individual liquid crystal molecules are arranged in parallel planes. On each plane the long axes of the molecules point in the same direction but in the next higher or lower plane the direction of the long axes of the liquid crystal mole-

For Summary Judgment, ftnt 13.

cules is offset, so that the direction of the long axes traces out a helical path when going from one plane of molecules to the next. Comp. & Ans. ¶ 12; PSMF and DR ¶ 10.

The helical architecture of chiral nematic liquid crystal molecules in the liquid crystal mixture causes it to exhibit color. The color depends on the chemical composition of the individual chiral nematic liquid crystal molecules in the mixture and, in most cases, the ambient temperature. Comp. & Ans. ¶ 13: PSMF and DR ¶ 11. As a result, TLCs are a particular color at a particular temperature. PSMF and DR ¶ 15. In some TLCs, if the temperature is changed by a small amount, a different color is exhibited. PSMF and DR ¶ 16. Other TLCs remain a single color over a wide temperature range. PSMF and DR ¶ 17. Dyes, pigments and thermochromic liquid crystals all absorb, reflect or constructively interfere with incident light to produce color and impart these colors to the products in which they are used, PSMF and DR ¶ 39, but TLCs are not pigments, DSMF and PR ¶ 6, or dyes. Comp. & Ans. ¶ 18, DSMF and PR ¶ 4, PSMF and DR ¶ 24.

E.M.'s TLCs with the designation "TM" change color over a narrow temperature range. PSMF and DR ¶ 20. E.M. uses different letter designations to indicate different uses of the TLCs. The "TM" mixtures here at issue function to exhibit color. PSMF and DR ¶ 22. A common application of TLCs is in temperature indicating devices in which they indicate the ambient temperature by changing color as the temperature changes.[2] PSMF and DR ¶ 35.

### B

### Material Facts In Issue.

The parties' central dispute is whether the principal use of TLCs is to impart color or measure temperature. Comp. & Ans. ¶ 16. Plaintiff states that TLCs impart color to the products in which they are incorporated. Defendant denies that the TLCs "impart"

color, but says that they "exhibit" color at a particular temperature. PSMF and DR ¶ 43. Further, Plaintiff claims that TLCs impart a specific color at a specific temperature, but Defendant asserts that color is "exhibited" at a specific temperature. PSMF and DR ¶ 32. That factual issue precludes summary judgment. Because principal use is the determining factor of whether the basket provision applies to the subject merchandise, material facts are in dispute.

### III

### DISCUSSION

### A

### Genuine Issues Of Material Fact Exist Which Preclude Summary Judgment As A Matter Of Law.

■ Under the rules of this Court, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCITR 56(d). Summary judgment will be denied, however, if the parties present "a dispute about a fact such that a reasonable trier of fact could return a verdict against the movant." *Semperit Indus. Prod., Inc. v. United States*, 18 CIT ——, ——, 855 F.Supp. 1292, 1297 (1994), quoting *Ugg Int'l, Inc. v. United States*, 17 CIT 79, 83, 813 F.Supp. 848, 852 (1993) (citations omitted). As previously discussed, the parties dispute the material fact of whether the principal use of TLCs is as coloring matter. Accordingly, as is shown below, summary judgment must be denied to both parties.

### B

### Subheading 3823.90.29 Is A Basket Provision, Applicable To The Subject Merchandise Only If It Cannot Be Classified Under A More Specific Provision Of The HTSUS.

Customs classified the TLCs at issue under HTSUS 3823.90.29 [3] which reads, in part:

---

2. TLCs designated as "TM" are commonly used as temperature indicating devices, according to Defendant. Plaintiff says that thermochromic liquid crystals designated as "TM" liquid crystals are used in temperature indicating devices (omitting the term "commonly"). DSMF and PR ¶ 14.

Both agree that temperature indication is one use.

3. Subsequent to importation of the merchandise here at issue, this subheading was renumbered

Chapter 38: Miscellaneous Chemical Products

3823 Prepared binders for foundry molds or cores; chemical products and preparations of the chemical or allied industries (including those consisting of mixtures of natural products), not elsewhere specified or included; residual products of the chemical or allied industries, not elsewhere specified or included:

.90 Other: Mixtures containing 5 percent or more by weight of one or more aromatic or modified aromatic substance

.29 Other.

■ Plaintiffs in a classification case are faced with two hurdles in order to prevail: "(1) deference to an agency's reasonable interpretation of the statute it administers; and (2) the statutory presumption, found in *28 U.S.C. Sec. 2639,* that Customs's decisions have a proper factual basis unless the opposing party proves otherwise." *Goodman Mfg., L.P. v. United States,* 69 F.3d 505, 508 (Fed.Cir.1995); *see* 28 U.S.C. § 2639(a)(1) (1994). E.M. Chemicals, as Plaintiff, bears the burden of overcoming these barriers.

■ As stated above, Heading 3823 provides for: "chemical products ... **not elsewhere specified or included**; residual products of the chemical or allied industries, **not elsewhere specified or included."** (emphasis added). Plaintiff argues that according to the express language of this heading, if a chemical product is specified elsewhere in the tariff schedule it must be classified under the specified provision rather than under a subheading of Heading 3823. At oral argument, Defendant conceded, and the Court agrees with Plaintiff's argument that subheading 3823.90.29 is a "basket provision" which cannot be applied until other provisions of the HTSUS are examined to determine if the subject merchandise is more appropriately classified elsewhere. *See* Sturm, *Customs Law & Admin* § 52 (1995), at 78 and cases

cited. Consequently, the Court will examine Plaintiff's proposed subheading, 3204.90.00 and Defendant's suggested subheading 3204.19.40, either of which, if applicable, would take the TLCs out of Customs' basket classification and successfully overcome both the deference owed to Customs in its capacity as administrator of the tariff schedules of the United States and the statutory presumption that Customs' decisions are based on a sound factual basis.

### C

**Heading 3204 Is A "Principal Use" Provision Which Requires The Parties To Prove The Principal Use Of The Class Or Kind Of Goods To Which The TLCs Belong.**

■ The meaning of tariff terms is a question of law, while their application to a particular product is a question of fact. *E.M. Chem. v. United States,* 9 Fed.Cir.(T) 33, 35, 920 F.2d 910, 912 (1990). The threshold issue is whether Heading 3204 is a principal use provision. Heading 3204 covers: "Synthetic organic coloring matter, whether or not chemically defined; preparations as specified in note 3 to this chapter based on synthetic organic coloring matter; synthetic organic products of a kind used as fluorescent brightening agents or as luminophores, whether or not chemically defined". For the reasons stated below, the Court holds that the term "coloring matter" in Heading 3204 is a principal use provision.

■ There are two principal types of classification by use: (1) classification according to the use of the class or kind of articles to which the imported merchandise belongs, and (2) classification according to the actual use of the imported merchandise. Sturm, *Customs Law & Admin* § 53.3 (1995); *see* Additional U.S. Rule of Interpretation 1(a), *infra; see also Lenox Coll. v. United States,* 20 CIT ——, Slip Op. 96–30, 1996 WL 47155 (Feb. 2, 1996). Provision (2) is inapplicable to this case.[4]

---

3823.90.27. Supplement 1 to the Harmonized Tariff Schedule of the United States (1991), Change Record.

**4.** "Actual use" is to be considered only when the tariff classification is controlled by use. Under

the TSUS, an example of an "actual use" provision is item 131.37 which provides for "Rice, Patna, cleaned, for use in the manufacture of

■ While some provisions expressly declare that classification of designated merchandise is dependent upon principal use, in most cases, principal use is implied from the language of the HTSUS. In other words, "[a] designation by use may be established, although the word 'use' or 'used' does not appear in the language of the statute." *E.C. Lineiro v. United States*, 37 CCPA 10, 14, C.A.D. 411, 1949 WL 4894 (1949) and cases cited.[5]

### i

### Heading 3204 Is A Principal Use Provision.

Defendant argues Heading 3204 is a "principal use" provision because the plain language of the Heading referring to the term "coloring matter" implicitly provides for "matter" used for "coloring". The word "coloring" acts as an adjective modifying the word "matter" in a way that "compels one to consider some aspect of use." Defendant's Cross–Motion at 10–11 (hereinafter "DCM"). Defendant bases this assertion on the Federal Circuit's reasoning in *Stewart–Warner Corp. v. United States*, 3 Fed.Cir.(T) 20, 748 F.2d 663 (1984), in which the Court held that the provision for "bicycle speedometers" was controlled by "chief use". The Court stated:

> Logic indicates that "bicycle speedometers" is a term "controlled by use," as General Interpretative Rule 10(e)-(i) provides, because the noun "bicycle" acts as

an adjective modifying "speedometer" in a way that implies use of the speedometer on a bicycle. If the modifying word or words were purely descriptive—i.e., a "green" speedometer or a "three-inch-in-diameter" speedometer—then the question of use would not arise. However, by employing the term "bicycle" to modify "speedometer," logic compels one to consider some aspect of use.

*Id.* at 25; 748 F.2d at 667.

Thus, the Defendant concludes that by applying the same reasoning, the word "coloring" acts as an adjective modifying the word "matter" and necessitates the consideration of use. DCM at 10–11.

■ Defendant also points to the Explanatory Notes [6] for further support of its argument that the term "coloring matter" is a principal use provision. The Explanatory Notes to Heading 3204 (sec. 32.04) state explicitly that "substances which 'in practice' are not used for their dying properties are **excluded.**" DCM at 12, citing *Explanatory Notes* at 455 (emphasis in original). The Explanatory Notes, while not legally binding, "provide a commentary on the scope of each heading of the Harmonized System and are thus useful in ascertaining the classification of merchandise under the system." DCM at 11–12, quoting H.R.Conf.Rep. No. 100–576, 100th Cong., 2d Sess. 549 (1988), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1582. A list of sub-

---

canned soups." Sturm, *Customs Law & Admin* § 53.3 (1995). (emphasis added). Similarly, HQ Ruling 957494, dated April 24, 1995, refers to HTSUS subheading 8408.90.10 as an "actual use" provision. Subheading 8408.90.10 classifies "Compression-ignition internal combustion piston engines (diesel or semi-diesel engines): Other engines: **To be installed** in agricultural or horticultural machinery or equipment". (emphasis added). Neither party here submits that any of the subheadings at issue are "actual use" provisions.

**5.** The concept of "principal use" is found in the TSUS (referred to as "chief use") as well as the HTSUS. *See Lenox Coll.*, 20 CIT ——, Slip Op. 96–30 at page 4. Although prior decisions under TSUS are not binding on decisions made under the HTSUS, TSUS decisions should be considered instructive in interpreting similar or the same nomenclature in the HTSUS. *See* H.R.Conf.Rep. No. 100–576, 100th Cong., 2d

Sess. 549, 550 (1988), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1582, 1583.

**6.** The *Explanatory Notes* are the official interpretation of the scope of the Harmonized Commodity Description and Coding System (which served as the basis of the HTSUS) as viewed by the Customs Cooperation Council, the international organization that drafted that international nomenclature. Thus, while the *Explanatory Notes* "do not constitute controlling legislative history," they "nonetheless are intended to clarify the scope of HTSUS subheadings and to offer guidance in interpreting its subheadings." *Mita Copystar Amer. v. United States*, 21 F.3d 1079, 1082 (Fed.Cir.1994). The *Explanatory Notes* are "generally indicative of the proper interpretation of the [HTSUS]." *Lynteq, Inc. v. United States*, 976 F.2d 693, 699 (Fed.Cir.1992), *quoting* H.R.Conf.Rep. No. 100–576, 100th Cong., 2d Sess. 549 (1988), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1582.

stances that are used for purposes other than coloring is excluded from the "coloring matter" heading.

■ The Court agrees with Defendant, and Plaintiff does not dispute, that the term "coloring matter" as found in Heading 3204 is a principal use provision. Additional US Rule of Interpretation 1 to the HTSUS[7] states: ". . . a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of goods of that class or kind to which the imported goods belong, and the controlling use is the principal use . . .".

■ The principal use of the class or kind of goods to which an import belongs is controlling, not the principal use of the specific import. *Group Italglass U.S.A., Inc. v. United States,* 17 CIT 1177, 1177, 839 F.Supp. 866, 867 (1993). "Principal use" is defined as the use "which exceeds any other *single* use." *Conversion of the Tariff Schedules of the United States Annotated Into the Nomenclature Structure of the Harmonized System: Submitting Report* at 34–35 (USITC Pub. No. 1400) (June 1983). As a result, "the fact that the merchandise may have numerous significant uses does not prevent the Court from classifying the merchandise according to the principal use of the class or kind to which the merchandise belongs." *Lenox Coll.,* 20 CIT ——, Slip Op. 96–30 at page 4.

### ii

### The Parties Have Failed To Establish The Class or Kind of Goods To Which The TLCs Belong.

■ When applying a "principal use" provision, the Court must ascertain the class or kind of goods which are involved and decide whether the subject merchandise is a member of that class. *See supra* Additional

US Rule of Interpretation 1 to the HTSUS. In determining the class or kind of goods, the Court examines factors which may include: (1) the general physical characteristics of the merchandise; (2) the expectation of the ultimate purchasers; (3) the channels of trade in which the merchandise moves; (4) the environment of the sale (e.g. the manner in which the merchandise is advertised and displayed); (5) the usage of the merchandise; (6) the economic practicality of so using the import; and (7) the recognition in the trade of this use. *United States v. Carborundum Co.,* 63 CCPA 98, 102, 536 F.2d 373, 377, *cert. denied,* 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 587 (1976); *see also Lenox Coll.,* 20 CIT ——, Slip Op. 96–30, at page 5.

■ The Court finds that there is conflicting evidence under the *Carborundum* factors above cited, and accordingly that principal use cannot be determined in a Motion for Summary Judgment.[8] Thus, Customs' classification of the imported merchandise under subheading 3823.90.29 cannot be affirmed because, as a matter of law, subheading 3823.90.29 mandates classification of an import that is specified elsewhere in the HTSUS in that other provision. Whether Plaintiff has successfully overcome the deference owed to Customs and the statutory presumption remains to be determined at trial as more evidence must be examined to determine whether the imported merchandise should be classified in an alternative subheading. The Court can, however, at this point narrow for trial issues regarding classification.

### D

### If TLCs Are Coloring Matter, They Are Properly Classified Under HTSUS 3204.19.40.

Customs has proposed as an alternative classification to HTSUS 3823.90.29, that if

---

7. The Additional U.S. Rules of Interpretation are not part of the international text of the Harmonized System. However, they are part of the HTSUS enacted by Congress as the United States tariff statute, *see* Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100–418, § 1204(a)(1)(C), 102 Stat. 1107, 1148, and are to be considered "statutory provisions of law for all purposes." *Id.* § 1204(c)(1), 102 Stat. at 1149.

8. Plaintiff argued on pages 1–3 of its Response Brief that Defendant admitted that "chiral nematic liquid crystals are a separate class of merchandise," PR at 2–3, because Defendant "admitted" to ¶¶ 8, 9 of the Complaint. At oral argument, however, Plaintiff conceded that it had, through an oversight, omitted the words "of merchandise" from ¶ 9, and that, accordingly, its basis for claiming an "admission" was invalid.

the TLCs are coloring matter, they are properly classified under HTSUS 3204.19.40 which provides:

3204: Synthetic organic coloring matter, whether or not chemically defined; preparations as specified in note 3 to this chapter based on synthetic organic coloring matter; synthetic organic products of a kind used as fluorescent brightening agents or as luminophores, whether or not chemically defined:

Synthetic organic coloring matter and preparations based thereon as specified in note 3 to this chapter:

.19: Other, including mixtures of coloring matter of two or more of the subheadings 3204.11 to 3204.19:

Other:

.40 Other: Products described in additional U.S. note 3 to section VI.

Plaintiff argues that TLCs should be classified under HTSUS 3204.90.00 which provides:

3204: Synthetic organic coloring matter, whether or not chemically defined; preparations as specified in note 3 to this chapter based on synthetic organic coloring matter; synthetic organic products of a kind used as fluorescent brightening agents or as luminophores, whether or not chemically defined:

.90: Other

Three categories of merchandise encompassed are by Heading 3204: (1) synthetic organic coloring matter, whether or not chemically defined; (2) preparations specified in chapter note 3 based on synthetic organic coloring matter; and (3) synthetic organic products of a kind used as fluorescent brightening agents or as luminophores, whether or not chemically defined. The subheadings indented one space under Heading 3204 cover "synthetic organic coloring matter and preparations based thereon as specified in note 3 to this chapter" (3204.11 to 3204.19); "Synthetic organic products of a kind used as fluorescent brightening agents" (3204.20); and "Other" (3204.90).

Both parties agree that the TLCs in this action are neither "preparations specified in note 3 to this chapter based on synthetic organic coloring matter", Comp. & Ans. ¶ 19;

PSMF and DR ¶ 25; DSMF and PR ¶ 7, nor "synthetic organic products of a kind used as fluorescent brightening agents or as luminophores, whether or not chemically defined." Comp. & Ans. ¶ 20; PSMF and DR ¶ 26; DSMF and PR ¶ 9. Therefore, in order to be properly classifiable under Heading 3204, the subject merchandise must be classifiable under a subheading covering "synthetic organic coloring matter, whether or not chemically defined". Based upon the parties' admissions stated above, the only two subheadings which possibly could be applied to "synthetic organic coloring matter" are subheadings 3204.11 to 3204.19, covering "synthetic organic coloring matter ..." proposed by Defendant, and subheading 3204.90 "Other" proposed by Plaintiff.

The "[C]ourt's duty is to find the *correct* result, by whatever procedure is best suited to the case at hand." *Jarvis Clark Co. v. United States*, 2 Fed.Cir.(T) 70, 75, 733 F.2d 873, 878 (1984). The Court may remand the case to Customs for further review as to the correct classification, conduct its own hearing, or examine the law and tariff schedules on its own initiative. *Id.* at 74, 75; 733 F.2d at 878. An examination of the provisions in question leads the Court to determine, for the reasons that follow, that subheading 3204.19.40 covers the imported merchandise, assuming the TLCs are coloring matter.

As stated above, the first subheading indented one space under Heading 3204 reads "Synthetic organic coloring matter and preparations based thereon as specified in note 3 to this chapter". Plaintiff argues that the lack of the phrase "whether or not chemically defined" in this subheading indicates that Congress did not intend all synthetic organic coloring matter to be classified under subheadings 3204.11 to 3204.19. PR at 19. Plaintiff claims that Congress' omission of the phrase in question indicates that Congress wanted only chemically defined merchandise to be classified here. According to Plaintiff, the phrase "synthetic organic coloring matter" must refer to single chemical substances because the *Explanatory Notes'* use of the language "mixtures of two or more products" cannot refer to products which are already mixtures, such as the subject mer-

chandise. PR at 25, citing *Explanatory Notes* at 456. Plaintiff concludes that subheading 3204.90.00 is the only subheading under Heading 3204 that provides for synthetic organic coloring matter which contain mixtures of two or more products. PR at 21–22.

▪ Plaintiff's analysis is incorrect. The deletion of "whether or not chemically defined" does not limit the subheading to only chemically defined synthetic organic coloring matter because the phrase "whether or not", when used in a superior heading, is considered to modify the article descriptions in the provisions under that heading even though the phrase was not repeated in the provisions thereunder. *See General Electric Co. v. United States,* 83 Cust.Ct. 56, 61, C.D. 4822, 476 F.Supp. 1082 (1979). In *General Electric Co,* decided by this Court under the Tariff Schedules of the United States (TSUS), the Court reasoned that "the invasive character of the 'whether or not' language in the superior heading would make recitation of such language in each of the indented subheadings redundant." *General Electric Co. v. United States,* 83 Cust.Ct. 56, 61, C.D. 4822, 476 F.Supp. 1082 (1979). *See also Montgomery Ward & Co., Inc. v. United States,* 74 Cust. Ct. 125, 130, C.D. 4596, 1975 WL 26986 (1975) (holding that "whether or not" phrase in the superior heading qualifies all of the provisions subordinate to the superior heading).

Further, Plaintiff's proposed subheading 3204.90.00 does not encompass the subject merchandise based on the structure of the statute. General Rule of Interpretation 6 to the HTSUS provides that "[f]or legal purposes, the classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings ... on the understanding that only subheadings at the same level are comparable." Subheadings 3204.11 to 3204.19 "Synthetic organic coloring matter and preparations based thereon as specified in note 3 to this chapter", subheading 3204.20 "Synthetic organic products of a kind used as fluorescent brightening agents" and subheading 3204.90.00 "Other" are all at the same level because they are all indented one space below the Heading. Comparing subheading 3204.90.00 to the other subheadings under Heading 3204, "Other" refers to merchandise "other" than "synthetic organic coloring matter and preparations based thereon as specified in note 3 to this chapter" and "other" than "synthetic organic products of a kind used as fluorescent brightening agents". Therefore, as the Court has already determined that subheadings 3204.11 to 3204.19 cover "synthetic organic coloring matter" whether or not chemically defined, subheading 3204.90.00 cannot include this type of merchandise.

Within subheadings 3204.11 to 3204.19, covering "synthetic organic coloring matter" as discussed above, subheading 3204.19.40 is the only place where the subject merchandise may be classified. Subheadings 3204.11 through 3204.17 specify "dye" or "pigment" and the parties agree TLCs are not dyes or pigments. *See* DSMF and PR ¶4; DSMF and PR ¶5; DSMF and PR ¶6. Subheading 3204.19 reads "other, including mixtures of coloring matter of two or more of the subheadings 3204.11 to 3204.19 ... other." The parties also admit that the TLCs "are not mixtures of coloring matter of two or more of the subheadings 3204.11 to 3204.19, HTSUS." DSMF and PR ¶8. Under subheading 3204.19, then, only 3204.19.40 which provides for "products described in additional U.S. note 3 to section VI" (referring to any product not listed in the Chemical Appendix), provides the classification for "mixtures" (which are not listed in the Chemical Appendix).[9]

Thus, the subject merchandise is properly classifiable under subheading 3204.19.40, if Plaintiff can adequately prove that the subject merchandise fits into the class or kind of goods for which the principal use is as coloring matter. Otherwise, it reverts to the basket provision of 3823.90.29.

## IV

## CONCLUSION

On a motion for summary judgment, the Court may not take it upon itself to weigh

---

9. The Government has not brought a cross-claim under subheading 3204.19.40.

the significance of the conflicting evidence presented. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1988). At trial, the Court can hear testimony regarding the class or kind of goods to which the subject imports belong. If the testimony conflicts, the Court can then assess the evidence to determine if the evidence is reliable and persuasive. *See, e.g., G. Heileman Brewing Co. v. United States,* 14 CIT 614, 622, 1990 WL 129489 (1990). Summary judgment is inappropriate because the Court cannot make such a decision at this time. *See Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11. Consequently, it is hereby

**ORDERED** that plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment are DE-NIED; it is further

**ORDERED** that, within fifteen (15) days of the date of this memorandum and order, the parties shall confer and apprise the Court of a convenient trial date during the month of May, 1996.