(C. D. 1976)

ROSS PRODUCTS, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided April 3, 1958)

*Siegel, Mandell & Davidson* (*Sidney Mandell* and *David Serko* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*William J. Vitale*, trial attorney), for the defendant.
*Lamb & Lerch* (*John G. Lerch* of counsel) as *amicus curiae*.

Before JOHNSON, DONLON, and RICHARDSON, Judges

JOHNSON, Judge: This is a protest against the collector's assessment of duty on merchandise described as milk cups at 10 cents per dozen pieces and 45 per centum ad valorem under paragraph 211 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, and the President's letter of notification of October 31, 1951, T. D. 52857, as decorated earthenware tableware, valued under $2 per dozen. It is claimed that the merchandise is properly dutiable at 10 cents per dozen pieces and 20 per centum ad valorem under said paragraph 211, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, as decorated earthenware cups, not wholly of clay, valued at $1 or more per dozen, or at 10 cents per dozen pieces and 25 per centum ad valorem, as other tableware, valued at $2 or more per

dozen. The latter claim was not referred to in plaintiff's brief and is deemed abandoned.

The pertinent provisions of paragraph 211, as modified, are as follows:

[As modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739 and T. D. 52857]:

| Tariff Act of 1930, paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 211 | Earthenware and crockery ware composed of a nonvitrified absorbent body, * * * including * * * mugs, cups, steins, lamps, and all other articles composed wholly or in chief value of such ware; all the foregoing, whether * * * painted, colored, tinted, stained, enameled, gilded, printed, ornamented, or decorated in any manner, and manufactures in chief value of such ware, not specially provided for: | |
| * | *    *    *    *    * | * |
| | Other tableware, kitchenware, and table and kitchen utensils: | |
| * | *    *    *    *    * | * |
| | Valued under $2 per dozen____ | 10¢ per doz. pieces and 45% ad val. |

[As modified by the General Agreement on Tariffs and Trade, T. D. 51802]:

| Tariff Act of 1930, paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 211 | Earthenware and crockery ware composed of a nonvitrified absorbent body not wholly of clay, * * * any of the foregoing which are tableware, kitchenware, or table or kitchen utensils, painted, colored, tinted, stained, enameled, gilded, printed, ornamented, or decorated in any manner: | |
| * | *    *    *    *    * | * |
| | cups valued at $1 or more per dozen; | |
| * | *    *    *    *    * | * |
| | all the foregoing_____ | 10¢ per doz. pieces and 20% ad val. |

At the trial, counsel for the respective parties stipulated as follows:

MR. MANDELL:    * * *

I offer to stipulate and agree with counsel for the Government that this item, J–2050, that is involved in this case and that appears in the invoice in the case and

in other invoices of subsequent and other importations, consists of earthenware tableware composed of an unvitrified absorbent body, not wholly of clay, decorated, and valued at more than $1, but under $2 per dozen pieces.

MR. VITALE: The Government will agree with counsel that the item J–2050 involved in this case meets those elements. We are not concerned here with any other cases.

A sample of the merchandise was received in evidence as plaintiff's exhibit 1. It is a barrel-shaped drinking vessel, about 3½ inches high and 2¾ inches in diameter. It has a curved handle, on top of which is a figure of a bird through which one can blow to make a whistle sound. The body of the article is decorated with figures of birds whistling and a musical scale. Inscribed on the bottom are the words "WHISTLE FOR YOUR MILK." The diameter of the top of the article is only slightly larger than that of the bottom. It has no foot.

Felix Lubliner, import manager of the plaintiff, testified that he had been with the company for 5½ years and that he was familiar with plaintiff's exhibit 1. He described it as an earthenware milk cup, used by children up to kindergarten age for the purpose of drinking milk in conjunction with meals, and for no other purpose.

The witness stated that, in his experience, cups generally are used for drinking beverages, such as coffee, tea, milk, and the like, but not for alcoholic beverages, and that they come in a great variety of shapes. He described a mug as a highly ornate drinking vessel, of larger capacity than a cup, round in circumference, but more or less straight-sided, and used almost exclusively for drinking alcoholic beverages. He was familiar with beer mugs, hot-toddy mugs, and Tom-and-Jerry mugs.

Mr. Lubliner agreed with a definition of a cup in Webster's New International Dictionary, 1934 edition, as a small, open bowl-shaped vessel used to drink from, with or without a handle or handles, a stem and foot, or a lid, but did not agree that it was commonly set on a saucer. He was in accord with the definition of a mug as a kind of earthen or metal drinking cup with a handle, usually cylindrical, and with no lip.

The witness stated that, normally, the type of porcelain cup that is used at the dinner table by adults in the ordinary service of a meal is used with a saucer, but he said that plaintiff's exhibit 1 is an article of children's tableware and is bought, sold, and used without a saucer. He also stated that children almost invariably drink milk out of a cup; that they can drink it out of a glass; and that no parent would serve a child milk out of a mug, as mugs are generally too valuable for that purpose.

Alexander Mintz, vice president of the plaintiff company, testified that he had designed plaintiff's exhibit 1 solely for the drinking of milk by children. The whistle feature was to make it more attractive to

children, so that they would want to use the cup and drink milk from it. He said that his firm calls the article a milk cup, but that, to increase sales, it is sometimes featured as a milk mug, "so that the children would be copying their parents who are using mugs." He added that the terms are used interchangeably.

The witness further testified that children's cups are decorated differently from adults' cups and that his firm sells cups of at least 15 to 20 shapes. He said that a mug is used for serving alcoholic beverages or coffee and that a coffee mug has straight or inverted sides, is very thick and heavy, and is used in cafeterias and restaurants.

Bernard Menge, eastern representative for the Homer Laughlin China Co., testified that he had been with that firm since 1929 and that its business was the manufacture and sale of all kinds of earthenware. In his view, based on the thinking in the trade, a mug is either straight-sided or barrel-shaped, measuring about the same across the top as across the bottom, heavier than a cup, with a heavier handle, having a flat bottom, and not used with a saucer. He said mugs are generally used for the service of cold drinks, such as beer, root beer, or lemonade.

Four articles which the witness called mugs were introduced into evidence as defendant's collective illustrative exhibits A–1, A–2, A–3, and A–4. They are rather heavy drinking vessels, flat-bottomed, cylindrical, and with more or less straight sides. Exhibit A–4 is a plain white, straight-sided drinking vessel, decorated with two guns and a lasso. The witness stated that it was a child's mug, which could be used for serving milk or Ovaltine. He said that exhibit A–2, a plain, cream-colored vessel, with very slightly indented sides, was designed for the Ovaltine Co. for the service of Ovaltine, a chocolate drink used with milk. He called exhibit A–1, a rose-colored drinking vessel, with slightly indented sides and a round handle, a Tom-and-Jerry mug.

Six samples of cups were produced by the witness and received in evidence as defendant's collective illustrative exhibits C–1, C–2, C–3, C–4, C–5, and C–6. The witness described a cup as a drinking vessel with a tapered side, the opening at the top being much larger than the bottom or the foot of the cup, the bottom being so designed that it would fit into the well of a saucer. He said cups are usually used for the service of hot drinks, such as coffee, tea, or cocoa. They are lighter in weight than mugs and have lightweight handles to match.

In the opinion of Mr. Menge, the instant merchandise, plaintiff's exhibit 1, is definitely a mug, since it fits all the descriptions of a mug. He said it is not a cup, because of its shape and because it has a flat bottom, is heavier than a cup, has a heavier handle, and is not used with a saucer.

The witness admitted that his firm did not make any barrel-shaped mugs, but said he had seen them in department stores where they were called mugs and never cups. He had seen barrel-shaped beer mugs with a capacity of 10 or 12 ounces.

The witness was shown a large drinking vessel, inscribed "PAW YER COFFEE'S READY!!" (plaintiff's illustrative exhibit 2). The witness said it was a jumbo coffee cup; that it had a foot and was generally sold with a saucer.

Arthur G. Renz, office manager of Edwin M. Knowles China Co., testified that he had had experience in the china and earthenware industry since 1911 and was familiar with all types of earthenware, including cups and mugs. He said that a mug is heavier than a cup, has a heavy handle, and the diameter of the top is very close to that of the bottom. It is flat-bottomed, may be straight-sided or barrel-shaped, and is not ordinarily used with a saucer. The witness referred to juvenile mugs and beer mugs and said they are generally used for the service of cold drinks.

Mr. Renz described a cup as wider at the top, tapering to a small diameter at the base, which fits into the well of the saucer with which it is used. Cups are usually used for the service of hot drinks, such as tea or coffee.

In the opinion of the witness, plaintiff's exhibit 1 is a mug, because of its construction and because it is known in the trade as a juvenile mug. He said his company makes a similar mug, defendant's illustrative exhibit A–4, which is termed a juvenile mug. It is never called a cup and does not come with a saucer. The witness doubted that plaintiff's exhibit 1 had a saucer. In his view, saucers would be impractical with juvenile articles, because children would throw them on the floor.

The witness stated that he had sold mugs of similar shape to plaintiff's exhibit 1, but they were larger. They were beer mugs, exact replicas of barrels, and held 10 or 12 ounces. He had also sold merchandise like plaintiff's illustrative exhibit 2 and had never sold it without a saucer.

However, Alexander Mintz, recalled as a witness, testified that his firm has been selling jumbo cups, such as plaintiff's illustrative exhibit 2, for 2 years and has never sold them with saucers; that, if the customers wanted saucers, his company would be unable to supply them.

The only issue in this case is whether the imported merchandise is dutiable under paragraph 211, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, as cups, valued at $1 or more per dozen, or under said paragraph, as modified by the Torquay protocol to the said general agreement, T. D. 52739 and T. D. 52857, as other tableware, valued under $2 per dozen. Duty was assessed under the

latter provision, in view of the fact that the appraiser described the merchandise as a mug, not a cup.

Paragraph 211, as originally enacted by Congress, enumerates, among other articles, both mugs and cups, indicating that Congress considered a mug to be different from a cup for tariff purposes, even though a mug has been defined by lexicographers as a kind of cup. The General Agreement on Tariffs and Trade, T. D. 51802, provides reduced rates of duty for certain articles covered by paragraph 211, including cups, valued at $1 or more per dozen, but mugs are not mentioned. The Torquay protocol, on the other hand, enumerates both mugs and cups, provides specially for some cups, and also covers other tableware in general. It is clear, therefore, that both Congress and the negotiators of the trade agreements classified cups and mugs separately. Consequently, if the imported merchandise is a mug, it cannot be classified as a cup, as the former is a more specific designation.

Plaintiff claims that the instant merchandise is not a mug, principally because it is not cylindrical (straight-sided) in shape. Reliance is placed upon definitions describing a mug as a kind of earthen or metal drinking cup, with a handle, usually cylindrical in form. Webster's New International Dictionary, 1952 edition; Funk & Wagnalls New Standard Dictionary, 1949 edition; The New Century Dictionary, 1927 edition. Plaintiff's witnesses also testified that a mug is more or less straight-sided in shape.

Both of defendant's witnesses, who had had many years' experience in the earthenware industry, gave a more detailed definition of a mug, to the effect that it is either straight-sided or barrel-shaped, measuring about the same across the top as across the bottom, having a flat bottom, heavier than a cup, and not used with a saucer. Following this definition, they stated that the instant merchandise is a mug. Furthermore, plaintiff's witness Mintz testified that while his firm calls the article a milk cup, it is also sometimes featured as a milk mug.

The sample itself is a potent witness. While it is barrel-shaped, rather than strictly cylindrical, its height exceeds its diameter, and it measures about the same across the top as across the bottom. It is thus more or less cylindrical in form, as are the mugs introduced into evidence as collective illustrative exhibits A-1, A-2, A-3, and A-4. It is heavier than a cup, is shaped differently, and is not used with a saucer, as cups ordinarily are. In our view, it is a mug within the common understanding of that term.

For the reasons stated, the protest is overruled. Judgment will be rendered accordingly.