59 CCPA

**The UNITED STATES, Appellant,**

v.

**NATIONAL SILVER CO., Appellee.**

**Customs Appeal No. 5406.**

United States Court of Customs
and Patent Appeals.

Feb. 10, 1972.

Stein & Shostak, Los Angeles, Cal., attorneys of record, for appellant. Marjorie M. Shostak, Los Angeles, Cal., of counsel.

L. Patrick Gray, III, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Frederick L. Ikenson, New York City, for the United States.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and RE, Judge, United States Customs Court, sitting by designation.

ALMOND, Judge.

The United States, defendant below, appeals from the decision and judgment of the United States Customs Court, Third Division,[1] which sustained appellee's claim that the imported drinking vessels were properly classifiable as mugs in item 533.71 of the Tariff Schedules of the United States (TSUS) and dutiable thereunder at 45% ad valorem. The customs officials classified the imported merchandise under item 533.75, TSUS, as cups, valued over $1.35 but not over $4.00 per dozen, and assessed duty thereunder at 10 cents per dozen pieces and 60% ad valorem.

The statutes involved are:

Tariff Schedules of the United States:

Schedule 5, Part 2, Subpart C:
Articles chiefly used for preparing, serving, or storing food or beverages, or food or beverage ingredients:
\* \* \* \* \* \* \*
Of nonbone chinaware of subporcelain:
\* \* \* \* \* \* \*
Household ware not covered by item 533.65, 533.66, 533.68, or 533.69:
533.71    Steins, mugs, candy boxes, decanters, punch bowls, pretzel dishes, tidbit dishes, tiered servers, and bonbon dishes ................... 45% ad val.

Other articles:
\* \* \* \* \* \* \*
533.75    Cups valued over $1.35 but not over $4 per dozen, \* \* \* .............. 10¢ per doz. pcs. + 60% ad val.

Appellee, plaintiff below, introduced three witnesses and submitted six exhibits. Appellant offered no testimony. Collective exhibit 1 consists of the eight drinking vessels in issue. Four different styles of drinking vessels are involved but they have in common the fact that the bottom of the liquid-containing portion of each is relatively flat, and they all have no lip and no saucer. Two of the drinking vessels are cylindrical, have square-shaped handles and a flared footed stem, and are taller than they are wide. Another pair of the vessels are similar but are wider than they are tall. Two others have straight sides tapered inward, modified square-shaped handles, and a flared footed stem, and are taller than they are wide. The last two parts of exhibit 1 have straight sides tapered inward, oval-shaped handles, and a short circular ridged part recessed into the bottoms. These two are also taller than they are wide.

The remaining exhibits include photographs of displays, advertisement tear sheets, reprints of advertisements, etc. This evidence of appellee's merchandising practice in 1966 and 1967 was offered to show that the imported goods are advertised, displayed, sold, and purchased as mugs. In that regard, the witnesses testified extensively about the manner in which the merchandise was sold, displayed, and advertised. The witnesses also testified as to their understanding of the differences between "cups" and "mugs."

After reviewing this evidence of appellee's merchandising practice, the Customs Court held:

Since the imported vessels are bought and sold at retail as mugs, the reasonable inference is that the public buys and accepts them as mugs within the common meaning of the term. \* \* \* This, *prima facie*, satisfies us that the imported vessels are of that class of articles commonly and commercially known as mugs.

---

1. National Silver Co. v. United States, 64 Cust.Ct. 92, C.D. 3964 (1970).

Appellant contends that the court below erred in giving determinative weight to the evidence of the 1966 and 1967 trade practices since such evidence could in no way have led to any inference that the imported articles fell within the 1962 (the year of enactment of the TSUS) common meaning of "mugs." Hoyt, Shepston & Sciaroni, S. Blondheim & Co. v. United States, 52 CCPA 101, C.A.D. 865 (1965), and Davies Turner & Co. v. United States, 45 CCPA 39, C.A.D. 669 (1957), are cited for the proposition that the meaning of words used in the tariff acts is fixed at the time of enactment and does not fluctuate as the meaning of the words might subsequently vary. It is appellant's position that the term "mugs" in 1962 did not encompass drinking vessels such as the imported ones, that the meaning of the word "mugs" has changed due to subsequent trade practices, and that the evidence of appellee's 1966 and 1967 merchandising practice illustrates only that the imported goods may be considered "mugs" under the changed meaning of that term but does not show that the involved drinking vessels would have been considered "mugs" in 1962.

We affirm the judgment below because we are convinced that the term "mugs" as used in the TSUS is broad enough to encompass the imported drinking vessels. While we agree with the Customs Court that the definition and general concept of a mug may be fluid and indefinite, there are some general characteristics which seem to distinguish a mug from a cup and which do not appear to have varied extensively over the years. These characteristics have been set forth in dictionary definitions and court decisions. For example, Webster's Third New International Dictionary (1963) defines a "cup" and a "mug" as:

cup 1: a usu. open bowl-shaped drinking vessel often having a handle and a stem and a base and sometimes a lid * * *: a handled vessel of china or glass that is set on a saucer and used for hot liquids (as coffee, tea, or soup).

mug 1a: a drinking cup usu. of metal or earthenware and usu. cylindrical with no lip but with a handle.

The Customs Court in 1958 stated that generally a mug is either straight-sided or barrel-shaped, measuring about the same across the top as across the bottom, having a flat bottom, heavier than a cup, and not used with a saucer. Ross Products, Inc. v. United States, 40 Cust.Ct. 158, C.D. 1976 (1958). On the other hand, the Customs Court has defined the word "cup" as designating a bowl-shaped drinking vessel commonly set on a saucer and used for the service of hot liquids. Ross Products, Inc. v. United States, 46 Cust.Ct. 8, C.D. 2226 (1961).

In the instant case we think the imported drinking vessels have enough of the characteristics of a mug to bring them under the specific provision for mugs and to distinguish them from what is commonly considered a cup. It is noted, for instance, none are bowl-shaped, but rather each is either cylindrical or straight-sided; they all have handles and no lip; they are generally heavier, taller, and larger in capacity than that which is commonly thought of as a cup; they all have essentially flat-bottomed, liquid-containing portions; and they are all used without a saucer. We conclude that such drinking vessels would have been considered mugs as that term was commonly used in 1962 at the time of enactment of the TSUS.

Like the Customs Court, we think the evidence of the merchandising practice, especially when coupled with the testimony of the witnesses as to the common meaning of "cups" and "mugs," is supportive of the conclusion that the imported goods fall within the common meaning of the term "mugs." Appellant has not established that the common meaning of "mugs" (at least in its broad sense) in 1966 and 1967 was signifi-

cantly different from what was thought to be a "mug" in 1962 at the time of enactment of the TSUS.

The judgment of the Customs Court is affirmed.

Affirmed.