COSMOS INTERNATIONAL, Plaintiff,

v.

UNITED STATES, Defendant.

No. 88–07–00549.

United States Court of
International Trade.

March 28, 1991.

Herrick & Ross (Peter S. Herrick and Fred P. Bingham, II, of counsel, on the brief), Miami, Fla., for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Joseph I. Liebman, Attorney-in-Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice (Nancy M. Frieden and Sheryl A. French, U.S. Customs Service, of counsel), New York City, for defendant.

## OPINION AND JUDGMENT

CARMAN, Judge:

Plaintiff, Cosmos International ("Cosmos"), contests the classification and liquidation of its merchandise, various forms of "ice pops", pursuant to section 515 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1515(a) (1988).

This Court has jurisdiction under 28 U.S.C. § 1581(a). After careful examination of the evidence presented at trial, the arguments of the parties, the tariff schedules, the case law, and other relevant authorities, this Court holds that the United States Customs Service ("Customs") improperly classified the subject merchandise as "[e]dible preparations not specially provided for (including prepared meals individually packaged) ... Other" under 183.05, Tariff Schedules of the United States ("TSUS"), at 10% *ad valorem* and finds the correct classification to be item 166.4040, TSUS, "[b]everages, not specially provided for; Other" at a rate of one cent per gallon.

## BACKGROUND

The merchandise consists of thirteen products. Evidence shows that the composition of all of the Cosmos products are essentially identical. The parties have stipulated to the description of the merchandise at issue as follows.

(1) GENIE FRUIT DRINK (Joint Exhibit ("J.Exh.") 3–F)

This product consists of 7.9 fl. oz. contained in a plastic container shaped like a bottle or jug with a handle, which is approximately 7″ tall, having a maximum circumference of 8″ and a minimum circumference of 5½″. There is a narrow projection measuring 1⅝″ from the top to the body of the container. Joint Stipulation ("Joint Stip.") at 3.

(2) PANDA BRAND–FRUITY ICE POPS (J.Exh. 3–G)

This product consists of 6.1 fl. oz. in a cylindrical plastic container approximately 5″ high and 6″ in circumference. There is a narrow flexible tube at the top, extending from the body of the container, which is approximately 5″ long and approximately ½″ in diameter. Joint Stip. at 3.

(3) SPACE SHUTTLE FREEZER POPS (J.Exh. 3–K)

This product consists of 7.2 fl. oz. contained in a plastic container shaped like a rocket which is approximately 7¼″ tall, having a maximum circumference of 7½″, and a minimum circumference of 6½″. There is a narrow projection measuring ⅞″ from the bottom to the body of the container. Joint Stip. at 4.

(4) KOALA FRUITY ICE POPS (J.Exh. 3–U)

This product consists of 3 fl. oz. in a plastic container approximately 4½″ high, of varying circumference, and shaped like a koala bear. The container has a narrower projection extending from the top of the head which is approximately 1″ long.

The merchandise is packaged in outer film packaging, which has no instruction for use. Joint Stip. at 6–7.

(5) JUMBO DRINK (J.Exh. 3–R)

This product consists of 3 fl. oz. contained in plastic containers from approximately 6″ to 7″ long with a narrower projection measuring 1¼″ from the top to the body of the container. There are four cylindrical-like shapes to the containers including a "banana" and two "bottle" shapes. Joint Stip. at 7.

(6) The following seven exhibits, although named differently, represent the merchandise in cylindrical tubes.

| | |
|---|---|
| SWISS ALPINE CHOCOLATE FLAVORED ICE | J.Exh. 3–L |
| POLAR BEAR FRUITY ICE POPS | J.Exh. 3–M |
| MOUNTAIN SNOW CREAMY ICE POPS | J.Exh. 3–N |
| MOUNTAIN SNOW FRUITY ICE POPS | J.Exh. 3–O |
| ALASKA SNOW FRUITY ICE POPS | J.Exh. 3–P |
| CALIFORNIAN SNOW FRUITY ICE BARS | J.Exh. 3–S |
| CALIFORNIAN SNOW FROST 'N CREAMY | J.Exh. 3–T |

Each of these products consist of 3 fl. oz. in a plastic cylindrical tube approximately 10½″ long with a maximum circumference of approximately 3″. The tube has a waist at the middle which is approximately 2″ in circumference. The tube becomes narrower at the top with that portion measuring 1¼″ from the top to the body of the cylinder. Joint Stip. at 4–5.

These products are packaged in outer film packages. The outer packaging provides identification of the product by brand name, identifies the contents, and states instructions for use. *Id.*

(7) CALIFORNIAN SNOW FRUITY ICE BARS (J.Exh. 3–Q)

This product consists of 6 fl. oz. in a plastic cylindrical tube approximately 11½″ long with a maximum circumference of approximately 4″. The tube has a waist at the middle which is approximately 3¼″ in circumference. The tube becomes narrower at the top with that portion measuring 1½″ from the top to the body of the cylinder. Joint Stip. at 6.

This product is packaged in an outer film package, that provides identification of the product, identifies the contents, and states instructions for use. *Id.*

Customs classified all forms of the merchandise at issue under item 183.05, TSUS, "Edible preparations not specially provided for (including prepared meals individually packaged) ... Other" at a rate of 10% *ad valorem*. Plaintiff filed timely protests pursuant to 19 U.S.C. § 1514(a) contesting the Customs' classification. Customs denied the protest pursuant to 19 U.S.C. § 1515(a) (1988), and plaintiff then filed a timely summons and complaint leading to the instant action. All liquidated duties have been paid.

## CONTENTIONS OF THE PARTIES

Plaintiff claims that the merchandise in its imported condition is a noncarbonated,

nonalcoholic beverage and is properly classifiable as a beverage not specially provided for under item 166.4040, TSUS, at a rate of duty of 1 cent ($0.01) per gallon. Plaintiff contends that the products at issue are imported in their liquid state; sold, marketed, designed, and used as a drink; and never consumed in a frozen, solid state. The plaintiff further contends that the imported merchandise is fit for use as a beverage and meets the substantial actual use requirement.

Defendant contends that the merchandise in this case consists of ready-to-freeze flavored liquid in a plastic film for making frozen confections and should be classified under item 183.05, TSUS, as an edible preparation because it is prepared and chiefly used as a human food. The defendant further contends that classification of the merchandise at issue under item 166.4040, TSUS, is incorrect because it does not meet the "fit for use as beverages" standard set forth in the tariff classification. For this reason, defendant argues that the plaintiff has not overcome the presumption of correctness standard that is required to defeat Customs' classification.

The following are the pertinent provisions of the Tariff Schedule:

Customs' Classification
Schedule 1, Part 15, Subpart B, Headnote 3:
> The term 'edible preparations' in items 182.90, 182.92, 182.96, 183.00, 183.01, and 183.05 [the classification in the instant case] embraces only substances prepared and chiefly used as a human food or as an ingredient in such food, but such term does not include any substance provided for in schedule 4 (except part 2E thereof) or schedule 5 (except part 1K thereof). Edible preparations not specially provided for (including prepared meals individually packaged):
> 183.05    Other .................... 10% ad val.

Plaintiff's Claimed Classification
Schedule 1, Part 12, Subpart B, Headnote 1:
> The provisions of this subpart cover only products fit for use as beverages, and do not apply to any product containing 0.5 percent or more of ethyl alcohol by volume or to any product described in subpart A of this part.
> 166.40    Beverages, not specially provided for ... 1 cent per gal.
>     166.4040 Other.............

---

## DISCUSSION

### Presumption of Correctness

■ As in all customs classification cases, plaintiff has the burden of overcoming the statutory presumption of correctness that attaches to the government's classification. 28 U.S.C. § 2639(a)(1) (1988). To determine whether the presumption of correctness has been rebutted, this Court must consider "whether the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States*, 2 Fed.Cir. (T) 70, 75, 733 F.2d 873, 878, *reh'g denied*, 2 Fed.Cir. (T) 97, 739 F.2d 628 (Fed.Cir.1984).

### Fit for Use as Beverages

■ The question of whether a particular item fits within the meaning of a tariff term is a question of fact. *Stewart–Warner Corp. v. United States*, 748 F.2d 663, 664–65 (Fed.Cir.1984). The General Interpretative Rules of the Tariff Schedules (1986) provide:
> 10.  *General Interpretative Rules.* For the purposes of these schedules—
> (e) in the absence of special language or context which otherwise requires—
> (i) a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of articles of that class or kind to which

the imported articles belong, and the controlling use is the chief use, *i.e.*, the use which exceeds all other uses (if any) combined.

The Appellate court in *United States v. Quon Quon Co.*, 46 CCPA 70, 73, C.A.D. 699 (1959) held that "[o]f all things most likely to help in the determination of the identity of a manufactured article, beyond the appearance factors of size, shape, construction and the like, use is of paramount importance."

■ Chief use means the principal or predominant use, neither exclusive or fugitive or possible use, but the usual and common use. *Franklin B. Howland v. United States*, 53 CCPA 62, 64, C.A.D. 878 (1966); *United States v. The Baltimore & Ohio R.R. Co.*, 47 CCPA 1, 5, C.A.D. 719 (1959). Schedule 1, Part 15, Subpart B, Headnote 3 of the Tariff Schedules defines "edible preparations" of item 183.05, TSUS, by chief use as a human food or ingredient in human food.

■ Beverages, however, are not classified by their chief use, rather the Tariff Schedule attaches the term "fit for use as beverages" to beverages under Schedule 1, Part 12, Subpart B, Headnote 1. The term "fit for beverage use" is satisfied by a "substantial actual use as a beverage." *Wah Shang Co. v. United States*, 44 CCPA 155, 159, C.A.D. 654 (1957).

In *Wah Shang*, the Court of Customs and Patent Appeals discussed whether merchandise was fit for beverage use. *Id.* A product which had been classified as a medicinal preparation containing more than 20 percent but not more than 50 percent of alcohol had a revenue tax imposed by the Internal Revenue Service pursuant to a provision covering distilled spirits. *Id.* 44 CCPA at 156–57. Plaintiff Wah Shang contended that the tax was improperly imposed. The court stated in *Wah Shang* that:

the term 'fit for beverage use' is not satisfied by a mere possibility of such use, and requires a substantial actual use as a beverage. But the term does not in our opinion require that the chief use of the merchandise shall be as a beverage.

It is entirely possible that a liquid chiefly used as a medicinal preparation may also be used as a beverage to an extent sufficient to justify a holding that it is fit for such use. The actions of the collector in classifying the instant merchandise as a medicinal compound, and taxing it as fit for beverage purposes, therefore, were not necessarily inconsistent.

*Id.* at 159.

Where a product is found to meet the fit for beverage use standard under the Tariff Schedule, then chief use is not required. The court in *United States v. Lorsch & Co.*, 8 Ct.Cust.App. 109, 111, T.D. 36799 (1917) found that " '[a]ctually,' or 'practically,' or 'commercially,' or 'commonly' fit for or used as, in no sense imply or require chief use."

■ Because the importers have every incentive to know the particular uses to which their merchandise are appropriated, their testimony as to the use should be afforded great probative value. *United States v. Baltimore & Ohio R.R. Co.*, 47 CCPA 1, 5–6, C.A.D. 719 (1959); *see Arbor Foods, Inc. v. United States*, 9 CIT 119, 122, 607 F.Supp. 1474, 1477 (1985) (citing *Klipstein v. United States*, 1 Ct.Cust.App. 122, 124 (1910)).

■ Plaintiff's witness, Mr. Witt is the president of E.E. Witt Company, a confectionary broker and sales organization. At the time of trial, he had handled Cosmos products for three years. As to the use of the product, Mr. Witt testified that when he sold the Cosmos products to a buyer, he explained that the products are consumed by drinking them as they melt. Trial Transcript ("Tr.") at 76. He also testified that all of the Cosmos products are consumed by drinking them. He explained the use of Cosmos products by the consumer by stating that:

[S]ometimes they will put it in the refrigerator and then snip off the top and drink it; other times they will freeze it and then the narrow matter in the middle will be broken in two on the edge of a table. And since it's narrower than the full width of the pop, you can't force it

up, so you have to wait until it melts to drink it out. That's the basic difference between a Californian Snow type pop (J.Exhs. 3–L–Q, S, T), which was developed only in the last ten years, to my knowledge, and the Mr. Freeze, which Leaf brought out many years ago.

Tr. at 71–72.[1] Mr. Witt stated that the reason the Cosmos products cannot be consumed in their frozen state is because the hole at the top is far too narrow for any frozen substance to pass through (Tr. at 86) and in order to eat it [Californian Snow (J.Exh. 3–S)] "[y]ou would have to cut it with an ax or something. You would have to take it apart. This is not designed to be eaten; it won't force up to the smaller hole." Tr. at 117.

Plaintiff's witness, Mr. Michael Willis, is a senior import specialist with the U.S. Customs Service. Mr. Willis admitted that he had classified the products at issue both as a beverage under 166.40 and as an edible preparation under 183.05. Mr. Willis testified that it would be very difficult to consume the Cosmos products in their frozen state. Tr. at 196. He thought the Cosmos products were consumed in their frozen state by clipping off the top tube-like protrusions and squeezing the frozen contents out as it melted or became slushy. Tr. at 189. He stated that one of the reasons he classified the product as an edible was because he equated it with a popsicle. Tr. at 198.

Mr. Willis further testified that although he classified items under item 166.40, TSUS, he never determined the meaning of "substantial use" through attaching a de-gree or frequency of use to it. Tr. at 157. His testimony indicated that a thorough investigation which would normally be carried out in the usual course of business when a particular concern about a classification of a product arises by filing a "6431" request form was never carried through. The National Import Specialist informed Mr. Willis that he/she would not rule on this issue until *Filbin* was decided due to the similarity of the issues. Tr. at 211.

Furthermore, Mr. Willis testified that he relied on Headquarter Ruling Letters that dealt with various issues of freezer pops, all of which classified freezer pops as an edible preparation. Tr. at 225–27. What Mr. Willis reveals is that he was not familiar with the merchandise at issue in the Headquarter Ruling Letters; in fact, he never saw the merchandise and was not able to describe the merchandise when asked to compare it to the Cosmos products. Tr. at 226.

Defendant's witness, Mr. William M. Lilla, is director of marketing for Capri Sun, Inc. He testified that in order [for Cosmos products] to be used in their frozen state it would be necessary to cut the container below the straw line. Tr. at 455. Mr. Lilla also testified that the Cosmos products were never included in any of his focus groups to determine product use. Tr. at 456. Neither had he conducted any quantitative or qualitative research on the Cosmos products nor witnessed the product being consumed. Tr. at 457.

Mr. Louis Block, defendant's witness, is the president and owner of Bee Interna-

---

1. Defendant's witness, Mr. William M. Lilla, is director of marketing for Capri Sun, Inc. He testified that

> Mr. Freeze brands are artificially flavored liquid preparations packaged in a polyester/polyethylene film.... The film construction allows for easy freezing. The film is formed to create a tube-like structure which is designed to allow for easy consumption of the contents in their frozen state. Each tube can be squeezed to extrude small portions of the frozen contents.... The plastic tube for freezer snacks is entirely nonfunctional ... as a delivery system for a liquid product.... The product formulas for freezer snacks are developed around several basic ingredients:
>
> water, fructose sweetener (or some other sugar-like sweetener), artificial flavors and coloring, preservatives, solidifiers, and sometimes natural fruit juice.

Tr. at 363–64.

Mr. Freeze is similar to the Kisko product that was the subject of action in *W.R. Filbin & Co., Inc. v. United States*, 744 F.Supp. 289, 14 CIT ——, (1990). The type of merchandise in *Filbin* consisted of certain products known as "freezer pops". They are packaged in a plastic film that can easily be torn open, thereby allowing the consumer to eat the product in its frozen state. This Court held in *Filbin* that these type of "freezer pops" were to be classified as an "edible preparation" under item 183.05, TSUS.

tional, a competitor of Cosmos International. He sells the product "Miami Ice" (Exh. I) which is similar to Cosmos product Californian Snow type freezer bars (J. Exhs. 3–J–Q, –S, –T). He demonstrated consumption of the Californian Snow (J. Exh. 3–S) to the Court at trial. The Court observed the difficulty Mr. Block had with extracting and biting the fully frozen contents of the merchandise. Tr. at 538, 540.

In addition, when Mr. Willis attempted to follow the instructions on the Californian Snow product, he testified that he was unsuccessful. Tr. at 214. The instructions direct the person to freeze the product, break it in half, and share it with a friend. When Mr. Willis attempted this, he testified that the plastic only bent and stretched; it would not break.

As to the use of the Cosmos products, this Court finds that these products meet the substantial actual use standard for beverages set forth in *Wah Shang*. As demonstrated at trial and by testimony, the Cosmos products are presented in a durable plastic container designed for consumption as a beverage and not to be eaten in their frozen state. In addition, this Court finds the analogy used by Mr. Willis comparing the Cosmos products to popsicles to be incorrect. A popsicle, if not eaten, will melt all over ones hand; a Cosmos product if not consumed will retain its liquid state until it is consumed.

■ Characteristics of a product aid in distinguishing one product from another for classifications purposes. *United States v. National Silver Co.*, 59 CCPA 64, 67, C.A.D. 1040, 455 F.2d 593, 595 (1972). The design of the product is one such characteristic and also a determinative factor. *Quon Quon*, 46 CCPA at 73. Many of the Cosmos products are of a variety of shapes; but all have a commonality, namely, the contents of the products are consumed through either a tube or straw-like projection on the packages or by breaking or cutting the tube at the waist on several of the products. Evidence of the containers of the Cosmos products show that the inside diameter of the straw-like projections and the inside diameter at the waist of the tube-type packages measure approximately $1/8''$ and $1/4''$ respectively and are significantly smaller than the inside diameter of the major part of the containers.

Plaintiff's witness Mr. Witt noted that the merchandise in issue was known in the trade as a "freezer pop." He further noted that these type of freezer pops at issue were different from the usual freezer pop because of their design. For example, he described the difference of the design of the Californian Snow (J. Exh. 3–S) with other freezer pops as being designed with a smaller neck to be broken in two, and then basically drunk as a beverage. Mr. Witt testified that if the product was in its frozen state, the children would wait for the product to melt before drinking it. Tr. at 68.

Mr. Witt distinguished the freezer pop known in the trade[2] with the products at issue by testifying that the common freezer pop had a wider top that children would either cut off or tear with their teeth. To get to the contents, the children would push up from the bottom and then eat the product. The Cosmos products, however, are designed with a small neck—the tip of which is broken off. Tr. at 70. The contents in their frozen state, however, will not come out. It is necessary to wait for the product to melt before it is possible to consume it. Tr. at 68.

Mr. Yeh, president of Cosmos International, testified that the design of the product was revolutionary, because each container is equipped with a straw, short or long, to be used for drinking the contents. Tr. at 278. Mr. Yeh testified that the Cosmos products were never designed to be used in their frozen state. He stated that this was obvious by looking at the small opening through the straw on the Cosmos products versus the wide opening of the traditional freezer pops. Tr. at 281–82.

**2.** The freezer pop which Mr. Witt was referring to is the same type of merchandise at issue in

*Filbin. See supra* note 1.

Defendant contends that the tip of the tube is not designed as a straw, but rather it serves a necessary function in the manufacturing process. Defendant's witness Mr. Block testified that the tips of the tube are merely a function of the production process and that they are used to fill the containers with liquid. Tr. 551–52. However, defendant's witness Mr. Lilla, when questioned on the package functionality, admitted that the package functionality of all of the Cosmos products would allow it to be consumed as a beverage. Tr. at 459. Furthermore, Mr. Lilla agreed that there is a difference in the shape and rigidity of the traditional freezer pops compared to the Cosmos products. Tr. at 465.

When plaintiff's witness Mr. Willis classified the merchandise for Customs, he consulted his predecessor and considered the packaging of the merchandise and the design of the item. Tr. at 204–05. He determined that because the products were not free standing and the packaging of the product used such terms as ice and freezer, that they would properly be classified as an edible preparation. Mr. Willis did not attempt to gain additional information as to the use of the product. He stated that he would not know how to obtain that information because it is not part of his job to engage in market research. Tr. at 209.

Plaintiff's witness, Mr. Witt, testified that the words "freezer," "ice," and "chill" are concepts involving temperature. Tr. at 60. As to the use of the words ice and freezer on the packaging of Cosmos products, plaintiff's witness Mr. Yeh testified that these terms were used to connote temperature because the colder the product was, the longer it would remain chilled. Tr. at 283.

Several of the instructions on the packaging direct the consumer to "chill" or "freeze" for a better taste. This Court notes that these products are marketed for consumption by children as a treat; testimony demonstrated that one of the reasons children freeze the Cosmos products is because "it takes longer to consume." Tr. at 99. Therefore, recommending that it be frozen, does not strip the product of its use

as a beverage, because the product is consumed by drinking. The fact that the Cosmos products when frozen are in a solid state does not make this an edible preparation.

Defendant would also have this Court believe that these products should be classified as an edible preparation because they can be consumed during some interval between the physical states of being a solid and a liquid—a state the defendant refers to as "slush" because there are ice particles in the liquid. Testimony at trial from both the defendant's and plaintiff's witnesses reveals that those witnesses thought that the Cosmos products would require an additional ingredient for them to obtain an intermittent state known as "slush". This Court finds that the mere presence of ice particles is not enough to tip the use of the merchandise at issue from a beverage to an edible preparation.

The Court finds through demonstration and evidence submitted at trial that these products are not capable of being eaten in their frozen state because of their design. The evidence drawn from this type of design demonstrates that when the contents of the Cosmos products are in their frozen state, they cannot be pushed through the narrow straw-type openings because the diameter of the openings are smaller than the diameter of the packaging which contains the frozen contents. Furthermore, this Court recognizes the function of the tip of the tube as a filling mechanism; however, the Court finds that the same tip also serves a dual and significant function as a straw.

The construction of the packaging is also a determinative factor in deciding whether the products at issue are substantially used as a beverage.

Government claims that the material used to make the products at issue is a "plastic film." Tr. at 17. Plaintiff's witness Mr. Witt, however, testified that the material used in the manufacturing of Cosmos products is a blow-molded plastic which is a sturdier container than the "flimsy plastic" often used in the manufacturing of various freezer pops. Tr. at 91.

922

Furthermore, plaintiff's witness Mr. Yeh distinguished the traditional freezer pop from the Cosmos products by stating that it was possible to hold the Cosmos products and to drink the contents, whereas a traditional freezer pop could not be held, because if it were all the liquid would spill out. Tr. at 270. Mr. Yeh also testified that the material in the Cosmos products is different, as well as the thickness and the construction of the container. Tr. at 271.

From an inspection of the items, it is obvious to this Court that the material used for the production of the merchandise at issue is more than a plastic film, it is a thicker, more durable plastic. The government relies on the language of the material used in *Filbin* to persuade the court that the products are similar. These arguments are misplaced. The construction and design of the products at issue in this case, with the exception of the ingredients, do not bear a resemblance to the products at issue in *Filbin*. This Court distinguishes the Cosmos products from the products in *Filbin* because the products in *Filbin* have a thin cellophane-type, long rectangular package which permits a frozen stick to be easily pushed up out of the packaging without thawing. Such packaging, as this Court held in *Filbin,* is unsuitable for use as a beverage because it can be eaten in its frozen state. *Filbin,* 744 F.Supp. at 292.

This Court finds that unlike the thin, somewhat fragile and flimsy packaging used for other "freezer pop" products—the type that enable the consumer to conveniently tear open the packaging and easily consume the product as a hard, completely frozen article—the packaging of the Cosmos product is different. The thickness of the inner packaging (compared to other types of packaging used in the *Filbin* case) provides a superior stiffness, toughness, and durability which facilitates consumption as a liquid and discourages easy tearing of the package for access to a hard-frozen content. The more substantial nature of the design, materials, and shapes of the packaging utilized by Cosmos also discourage consumption when fully frozen. Consumption of these products is only possible when the contents are either in a substan-

tially or fully thawed form. The durable plastic, shape and rigidity of the Cosmos packaging, and the method of consumption deem these products fit for use as a beverage.

This Court holds that plaintiff has established that the use of its merchandise as a beverage is "a substantial actual use" as required by the term "fit for use as beverages" in Headnote 1 of Part 12, Subpart B. *Wah Shang,* 44 CCPA at 159. The Court finds that the substantial use of the merchandise is as a beverage.

## CONCLUSION

This Court holds, after having examined the evidence presented at the trial, the relevant statutes and authorities, and upon all other matters presented, that the plaintiff has overcome the presumption of correctness and that Customs incorrectly classified the merchandise at issue as an "edible preparation" under item 183.05, TSUS. It is also the holding of this Court that the correct classification of the merchandise at issue is as a "beverage" under item 166.-4040, TSUS, as maintained by plaintiff. Judgment will issue accordingly.

## ORDER

This case having been duly submitted for decision and this Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

ORDERED, ADJUDGED, AND DECREED that the United States Customs' classification of the subject merchandise under item 183.05, TSUS, is reversed, and it is further

ORDERED, ADJUDGED, AND DECREED that the United States Customs Service shall reliquidate the subject merchandise under item 166.4040, TSUS, and shall refund all excess duties with interest as provided by law.