MOTOR WHEEL CORP, PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 90–10–00549

(Dated March 20, 1995)

*Barnes, Richardson & Colburn (David O. Elliot, Sandra Liss Friedman,* and *Alan Goggins),* for plaintiff.

*Frank W. Hunger,* Assistant Attorney General; *Joseph I. Liebman,* Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice *(Mark S. Sochaczewsky);* United States Customs Service *(Chi S. Choy),* of counsel, for defendant.

## MEMORANDUM AND OPINION

GOLDBERG, *Judge:* This matter comes before the court on plaintiff's motion for partial summary judgment. Plaintiff, Motor Wheel Corp. ("Motor Wheel"), challenges the decision of the United States Customs Service ("Customs") to classify the subject imports under subheading 7208.90.00 of the Harmonized Tariff Schedule of the United States ("HTSUS"), as other flat-rolled products of a width of 600 mm or more, of iron or nonalloy steel, dutiable at the rate of 4.5 percent *ad valorem*. In moving for partial summary judgment, Motor Wheel asserts that its merchandise is properly classified as a stamped article under subheading 7326.19.00, HTSUS, dutiable at the rate of free as a product covered under the Automotive Products Trade Act of 1965 ("APTA"). Alternatively, Motor Wheel claims that its imports are properly classified under either subheading 8708.70.80, HTSUS, as road wheels and accessories thereof, or under subheading 8708.99.50, HTSUS, as parts of motor vehicles; both provisions also provide for duty-free entry under APTA. Motor Wheel's motion for partial summary judgment is limited, however, to its claim for classification under subheading 7326.19.00, HTSUS.[1] Although defendant agrees that plaintiff's motion raises no genuine issue

---

[1] Motor Wheel concedes that both of its alternative claims raise "contested material issues of fact." *Plaintiff's Memorandum in Support of Its Motion For Partial Summary Judgment ("Plaintiff's Brief")* at 2.

of material fact, defendant opposes plaintiff's motion, arguing that Motor Wheel's claims are wrong as a matter of law.[2] The court exercises its jurisdiction pursuant to 28 U.S.C. § 1581(a) (1988).

## BACKGROUND

Motor Wheel is the importer of record and ultimate consignee of the imported merchandise. The subject imports consist of cut steel of either circular or octagonal shape which has been cut from a nonalloy (hot-rolled) steel coil, to precise dimensions by an automated cookie cutter process. *Plaintiff's Brief* at 2; *id.,* Exh. A, ¶ 2 *("Gifford Affidavit"); id.,* Exh. C, ¶ 2 *("Alfano Affidavit")*. With the exception of the steel coil used to make blank numbers 41693B and 41701B, Motor Wheel purchased all of the steel coil used to produce the imported merchandise from Stelco, Inc. ("Stelco"). *Gifford Affidavit* ¶ 4. Furthermore, all steel coil supplied by Stelco to Motor Wheel during the relevant period was produced by Stelco at its plant in Nanticoke, Canada. *Alfano Affidavit* ¶ 2. Prior to importation, Motor Wheel cut the steel coil obtained from Stelco, and die sunk the cut steel with an identifying automotive part number, heat code, date and place of manufacture, and coil identification. *Gifford Affidavit* ¶ 2. After importation, the subject imports were processed into finished wheel discs by undergoing five to nine additional forming operations.[3] The finished wheel discs were then assembled with wheel rims, which were created via a separate process. *Plaintiff's Discovery Response* ¶ 3.

In its motion, Motor Wheel first argues that its merchandise is not classifiable under subheading 7208.90, HTSUS. In the alternative, Motor Wheel argues that should the court find that the subject imports are classifiable under subheading 7208.90, subheading 7326.19 should nevertheless prevail because it is relatively more specific than the provision selected by Customs. Furthermore, should the court find these two provisions equally specific, Motor Wheel argues that pursuant to the General Rules of Interpretation ("GRI") of the HTSUS, subheading 7326.19 should still prevail because it appears last in the tariff schedule. Finally, Motor Wheel contends that, as a matter of law, it has established that its merchandise meets the requirements for duty-free entry under APTA.

In response, the government concedes that the subject merchandise meets the description of an article of iron or steel, forged or stamped but not further worked, as provided for under subheading 7326.19.00, HTSUS. *Plaintiff's Brief,* Exh. B at 2, ¶ 1 *("Defendant's Response To Plaintiff's First Request For Admissions")*. The government contends, however, that Customs did not classify the imported merchandise under subheading 7326.19.00 because it is more specifically provided for under subheading 7208.90.00, HTSUS. *Id.* ¶ 2. The government further ar-

---

[2] *Defendant's Memorandum in Support of Its Opposition to Plaintiff's Motion For Partial Summary Judgment ("Defendant's Brief")* at 2 & n.2; *Defendant's Response to Plaintiff's Statement of Material Facts as to Which No Genuine Issue Exists* at 1–2 & n.2.

[3] *Plaintiff's Responses to Defendant's Second Interrogatories and Request For Production of Documents ("Plaintiff's Discovery Response")* ¶ 3.

gues that plaintiff's motion for partial summary judgment should be denied because Motor Wheel is wrong as a matter of law with respect to the issues it raises in its motion. *Defendant's Brief* at 3. For the reasons that follow, the court finds that the contested merchandise is properly classified under subheading 7326.19.00, HTSUS, and is dutiable at the rate of free pursuant to APTA.

## DISCUSSION

Customs' classification decision enjoys a statutory presumption of correctness; plaintiff bears the burden of overcoming this presumption. 28 U.S.C. § 2639(a)(1) (1988); *Cosmos Int'l v. United States,* 15 CIT 137, 140, 760 F. Supp. 914, 917 (1991). To determine whether the statutory presumption of correctness has been overcome, the court must consider whether the government's classification is correct, both independently and in comparison with plaintiff's proposed alternatives. *Jarvis Clark Co. v. United States,* 2 Fed. Cir. (T) 70, 75, 733 F.2d 873, 880 (1984).

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT Rule 56(d). Upon review, the court agrees with the parties that Motor Wheel's motion for partial summary judgment does not give rise to any genuine issues of material fact.

Plaintiff's motion raises the following three issues of law. First, the court must determine whether the undisputed facts show that Customs incorrectly classified the subject imports under subheading 7208.90.00, HTSUS. Second, if the provisions advanced by Motor Wheel and the government are both found to describe the imported merchandise, the court must determine which of these two provisions should prevail. Third, if the subject merchandise is found to be properly classified under subheading 7326.19.00, HTSUS, the court must determine whether the undisputed facts show that plaintiff's imports are eligible for duty-free entry under APTA. Each of these issues will be considered in turn.

### A. *Classification Under Subheading 7326.19.00, HTSUS:*

Customs liquidated the subject merchandise under subheading 7208.90.00, HTSUS, which provides for: "Flat-rolled products of iron or nonalloy steel, of a width of 600 mm or more, hot-rolled, not clad, plated or coated: Other." Motor Wheel contends that its merchandise is properly classified under subheading 7326.19.00, HTSUS, which provides for: "Other articles of iron or steel: Forged or *stamped, but not further worked:* Other." (Emphasis added). In support of its position, Motor Wheel submits that "flat-rolled products which have been further processed by stamping no longer can be described by the common meaning of the tariff term 'flat-rolled product.'" *Plaintiff's Reply Memorandum in Support of Its Motion For Partial Summary Judgment ("Plaintiff's Reply Brief")* at 2. The court agrees.

The gravamen of the dispute before the court is whether the process of stamping sufficiently advances the flat-rolled steel such that the resulting blank (or stamped article)[4] is so distinct from the flat-rolled steel coil input from which it was produced that it can no longer be described by the common meaning of the term "flat-rolled steel" but instead assumes the character of a different article under the tariff schedule. Chapter Note 1(k) to Chapter 72 of the HTSUS provides that:

> Flat-rolled products of a shape other than rectangular or square, of any size, are to be classified as products of a width of 600 mm or more, *provided that they do not assume the character of articles or products of other headings*. [Emphasis added.]

It is undisputed that the subject imports are circular or octagonal, and so, are of a shape other than rectangular or square. It is also undisputed that the subject imports are produced from flat-rolled (hot-rolled) steel. But, as the court further explains below, because plaintiff's merchandise "assume[s] the character of articles or products" of another heading of the HTSUS, the proviso in Note 1(k) precludes classification of the subject imports as flat-rolled steel products under Heading 7208, HTSUS. Motor Wheel has therefore established that Customs' classification is incorrect.

The meaning of a tariff term is a question of law. *Brookside Veneers, Ltd. v. United States,* 6 Fed. Cir. (T) 121, 124, 847 F.2d 786, 788 (1988). Tariff terms are construed according to their common and commercial meanings, which are presumed to be the same. *Nippon Kogaku (USA), Inc. v. United States,* 69 CCPA 89, 92, 673 F.2d 380, 382 (1982). Congress is presumed to know the language of commerce, and to have framed tariff acts so as to classify articles "according to the general usage and denominations of trade." *Nylos Trading Co. v. United States,* 37 CCPA 71, 73, C.A.D. 422 (1949). In this case, Congress has not provided a definition of the term "flat-rolled product" that is different from its common and commercial meaning. The merchandise at issue is not commonly or commercially known as a flat-rolled product, but rather as a stamping made from flat-rolled steel.

Mr. James Alfano, Vice President and General Manager of Stelco's Lake Erie Works Business Unit, has testified that within the steel industry, flat-rolled products do not commonly and commercially include stampings made from such flat-rolled products; rather, stampings are considered *advanced* steel products. *Alfano Affidavit* ¶ 3. Mr. Keith Gifford, the Manager of Corporate Purchasing for Motor Wheel, has testi-

---

[4] A blank is defined as "a shape cut from flat or preformed stock." 4 American Society For Metals, *Source Book on Forming of Steel Sheet* 305 (8th ed.). Blanking is defined as "the cutting of the complete outline of a workpiece in a single press stroke." *Id.; see also McGraw-Hill Dictionary of Science and Engineering* 102 (Sybil P. Parker ed., 1984) (blanking is the "[c]utting of plastic or metal sheets into shapes by striking with a punch). The process of stamping has been similarly defined as follows:

[T]o cut out, bend, or form by a blow or sudden pressure with a stamp or die.

*Webster's Third New International Dictionary of the English Language Unabridged* 2222 (1993). The court notes that the cutting process involved in the production of plaintiff's merchandise meets both definitions. The court further notes that stamping has been recognized as a distinct manufacturing process. *W.R. Filbin & Co. v. United States,* 73 Cust. Ct. 56, 69, C.D. 4554 (1974). The court will therefore refer to plaintiff's merchandise interchangeably as a "stamping," "blank," or "stamped article" which has resulted from a "stamping" or "blanking" process.

fied that the subject merchandise is commonly and commercially known as a stamping which is stamped from steel mill flat-rolled products. *Gifford Affidavit* ¶ 3. Accordingly, the steel industry does not consider stampings to be within the class or kind of steel mill products known as flat-rolled products.[5] *Alfano Affidavit* ¶ 3. The uncontroverted testimony of Mr. Alfano and Mr. Gifford attests to the fact that a stamping is considered within the relevant industry to be sufficiently advanced to merit description as an article distinct from the flat-rolled steel coil input from which it was produced. Indeed, Congress has recognized as much by expressly providing for stamped articles of steel which have not been further worked under subheading 7326.19.00, HTSUS.

In addition, the court notes that the "flat-rolled products" industry is recognized as being separate from the "automotive stampings" industry. The *Standard Industrial Classification Manual*[6] distinguishes between manufacturers of flat-rolled products and establishments which produce automotive stampings. Manufacturers of flat-rolled (hot-rolled) steel products fall under Industry Group No. 331, Industry No. 3312.[7] Manufacturers of automotive stampings, on the other hand, are expressly provided for under Industry Group No. 346, Industry No. 3465.[8]

Significantly, even the government concedes that plaintiff's merchandise meets the description of an article of iron or steel, forged or stamped but not further worked, as provided for under subheading 7326.19.00, HTSUS. *Defendant's Response To Plaintiff's First Request For Admissions* ¶ 1. Defendant responds, however, by noting that under GRI No. 1 of the HTSUS, classification is determined according to the terms of the *headings* and any relative section or chapter notes. The government observes that the proviso in Chapter 72, Note 1(k), permits classification of flat-rolled products under Chapter 72, if such merchandise does not "assume the character of other *headings.*" (Emphasis added). Because Motor Wheel's proposed Heading 7326 includes only the terms "other articles of iron or steel," and not the phrase "[f]orged or stamped, but not further worked," defendant argues that the merchandise does not assume the character of Heading 7326. The court notes, however, that "[f]or the purposes of the tariff schedule, unless the context otherwise requires * * * a reference to '*headings*' encompasses subheadings indented thereunder." General Note 7(f), HTSUS. The court finds that in this case the context does not "otherwise require." Because subheading 7326.19 includes the phrase "[f]orged or stamped, but not further worked," the government's argument must fail. The court finds that the proviso in Chapter 72, Note 1(k) is applicable in this case, and precludes

[5] Mr. Alfano further testified that flat-rolled products in the steel industry are commonly and commercially known as steel mill products and include "sheets, strip, tin plate, black plate, flat bars, slabs, plates, coils, skelp and hoop." *Alfano Affidavit* ¶ 3.

[6] Executive Office of the President, Office of Management and Budget, *Standard Industrial Classification Manual* (1987).

[7] *Id.* at 173; *Plaintiff's Brief*, Exh. 1 to Exh. C.

[8] *Id.* at 191; *Plaintiff's Brief*, Exh. 2 to Exh. C.

classification of the subject imports under subheading 7208.90.00, HTSUS.

For the foregoing reasons, the court finds that Customs' classification is incorrect, and that plaintiff's merchandise is classifiable under subheading 7326.19.00, HTSUS. Because the court finds that the subject imports are not classifiable under the provision chosen by Customs, the court need not engage in a relative specificity inquiry with regard to the provisions advanced by each of the parties.

B. *Duty-Free Entry Under APTA:*

APTA provides for duty-free entry of imported merchandise that meets the following requirements:

> 1. It must be a Canadian article;
> 2. It must have been obtained from a supplier in Canada under or pursuant to a written order, contract, or letter of intent of a bona fide motor-vehicle manufacturer in the United States;
> 3. It must be a fabricated component; and
> 4. It must be intended for use as original equipment in the manufacture in the United States of a motor vehicle.

General Note 3(c)(iii)(A)(2), HTSUS. As an initial matter, the court notes that Motor Wheel has abandoned its claims with regard to blank numbers 41693B and 41701B, which were produced from steel of Japanese origin. *Plaintiff's Brief* at 22 n.4; *Gifford Affidavit* ¶ 4. Consequently, these two blank numbers are no longer at issue in this action. In addition, the government concedes that plaintiff's remaining entries were made from steel of Canadian origin; therefore, this prerequisite for duty-free entry is met.

The parties do not dispute that importation of plaintiff's merchandise is pursuant to a contract with a bona fide motor vehicle manufacturer in the United States. *Gifford Affidavit* ¶ 2. The parties also do not dispute that the ultimate intended use of the merchandise is as original equipment, i.e. wheel discs, in the manufacture in the United States of a motor vehicle. Indeed, this is reflected on the merchandise itself, as it is die sunk with an identifying automotive part number. Moreover, in its response to plaintiff's first interrogatories, defendant concedes that Customs has not identified any actual use, fugitive or otherwise, for the imported merchandise other than in the production of automotive parts. *Plaintiff's Reply,* Exh. A, ¶ 7 *("Defendant's Responses To Plaintiff's First Interrogatories And Request For Production Directed To Defendant").* As a result, these prerequisites for duty-free entry under APTA are also satisfied.

Finally, for the reasons that follow, the court finds that the subject merchandise is a fabricated component and therefore merits duty-free entry pursuant to APTA. First, legislative history suggests that the term "fabricated component" should be construed broadly to achieve the statute's desired end. APTA was intended to reduce trade tensions and expand trade in automotive products between Canada and the United States through tariff reduction, thereby permitting more effi-

cient use of manufacturing facilities in the two countries.[9] *See* S. Rep. No. 782, 89th Cong., 1st Sess., *reprinted in* 1965 U.S.C.C.A.N. 3670, 3671–72. The intended scope of the term "fabricated component" is addressed in the report of the House Ways and Means Committee on APTA, which states:

> The term "fabricated component" is a term of limitation which embraces finished *or unfinished components* actually incorporated into a motor vehicle. The term does not, however, include materials such as metal plate, sheet, strip, wire, pipes and tubes, and textile piece goods. In other words, *although at the time of importation the component does not have to be in a condition completely ready for assembly without further fabrication, it must at a minimum be so far processed as to be physically recognizable as a component in an unfinished state.*

H.R. Rep. No. 537, 89th Cong., 1st Sess. at 27 (1965) (emphasis added). Significantly, neither the legislative history nor the act itself defines the degree of fabrication which an article must undergo in order to be considered a "fabricated component" under APTA. The only criteria that must be met is that the imported merchandise "be so far processed as to be physically recognizable as a component in an unfinished state."

Case law also reflects that the term "fabricated component" is to be construed broadly under APTA. In *John V. Carr & Son, Inc. v. United States,* 76 Cust. Ct. 162, 414 F. Supp. 620 (1976), the court addressed whether imported bulk plastic automotive air brake hose, which required despooling and cutting to length following importation, was a "fabricated component." Because the imported hose was an automotive component that required no further fabrication upon importation,[10] the *Carr* court held that it was clearly a fabricated component under APTA. In reaching its decision, the court emphasized that the imported hose "more than [met] the requirements of the Ways and Means Committee report to qualify as a 'fabricated component.'" *Carr,* 76 Cust. Ct. at 177, 414 F. Supp. at 631. In particular, the court stressed that the imported hose was physically recognizable as an automotive component and was specifically designed in accordance with specifications promulgated by the Society of Automotive Engineers ("SAE"),[11] which was reflected in the product's labelling. *Id.*, 414 F. Supp. at 631. Also evident is the fact that the imported merchandise in *Carr* had been advanced beyond the material state of its inputs prior to importation. *See id.* at 175–77, 414 F. Supp. at 630–31.

---

[9] APTA was enacted in response to a controversial 1963 Canadian plan to promote automotive exports to the United States. *See generally* H.R. Rep. No. 537, 89th Cong., 1st Sess. (1965). Specifically, APTA was enacted on October 21, 1965, to provide for the implementation of the Agreement Concerning Automotive Products Between the Government of the United States of America and the Government of Canada signed on January 16, 1965. 19 U.S.C. § 2001 (1988). As a result of this Agreement, Canada revoked its controversial plan to promote automotive exports to the United States. S. Rep. No. 782, 89th Cong., 1st Sess., *reprinted in* 1965 U.S.C.C.A.N. 3670, 3672.

[10] The *Carr* court noted that cutting to length does not constitute further fabrication. *Carr,* 76 Cust. Ct. at 176, 414 F. Supp. at 630.

[11] The Society of Automotive Engineers is an automotive industry association which prepares specifications for automotive components. *Carr,* 76 Cust. Ct. at 167, 414 F. Supp. at 624.

Similarly, in this case the subject imports are stamped from steel which has been manufactured in accordance with SAE specifications for the tensile and yield strengths needed for the fatigue loading requirements of a finished wheel disc;[12] the coil identification information that was die sunk into the merchandise prior to importation reflects the merchandise's conformity with SAE specifications. In addition, as the court noted previously, the subject merchandise is advanced beyond the material state of the flat-rolled steel coil input via the stamping process. Thus, although the subject imports require five to nine additional post-importation fabrication steps, such further fabrication, in and of itself, does not preclude the conclusion that plaintiff's merchandise is sufficiently fabricated to be considered a "fabricated component" under APTA.[13]

In sum, based upon: uncontroverted evidence that the subject merchandise is fabricated beyond the material state of the flat-rolled steel coil input prior to importation; the merchandise's conformity with SAE specifications for finished wheel discs, which is reflected in the coil identification information that was die sunk into the merchandise prior to importation; the fact that the subject merchandise was die sunk with an identifying automotive part number prior to importation; and the fact that Customs has identified no other use for the subject imports other than as a component of manufactured wheel discs, the court finds that the imported merchandise is in fact "so far processed as to be physically recognizable as a component in an unfinished state." Consequently, the court finds that this final prerequisite for duty-free entry under APTA is satisfied.

## CONCLUSION

Upon review, the court holds that Motor Wheel has overcome the statutory presumption of correctness that attaches to Customs' classification decision, and has established that Customs incorrectly liquidated the subject imports under subheading 7208.90.00, HTSUS, because that provision does not encompass stampings cut from flat-rolled steel. The court finds that plaintiff's merchandise is commonly and commercially known as a stamping which has been cut from flat-rolled steel, and is therefore properly classified under subheading 7326.19.00, HTSUS. The court also finds that the subject imports are fabricated components within the meaning of APTA. Consequently, because the contested merchandise meets all of the requirements for duty-free entry under APTA, the court holds that the imports at issue are dutiable at the rate of free. For the forgoing reasons, plaintiff's motion for partial summary judgment is granted. Judgment will be entered accordingly.

---

[12] All of the steel coil purchased by Motor Wheel from Stelco met either SAE specification 1015 or 955XF. *Gifford Affidavit* ¶ 4.

[13] The court notes that there is no evidence that, in enacting the HTSUS, Congress intended to alter the broad scope of the term "fabricated component" under APTA.